**Record No. 13-1795**

# IN THE

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔠𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

## FOR THE FOURTH CIRCUIT

_____

KHARYN RAMSAY,

*Plaintiff-Appellant,*

v.

SAWYER PROPERTY MANAGEMENT OF MARYLAND LLC;
JEFFREY TAPPER, Attorney-At-Law,

*Defendants-Appellees.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
AT BALTIMORE

_____

**OPENING BRIEF OF APPELLANT**

_____

E. David Hoskins
THE LAW OFFICES OF
E. DAVID HOSKINS, LLC
16 E. Lombard Street, Suite 400
Baltimore, MD 21202
(410) 662-6500
davidhoskins@hoskinslaw.com

Max F. Brauer
THE LAW OFFICES OF
E. DAVID HOSKINS, LLC
16 E. Lombard Street, Suite 400
Baltimore, MD 21202
(410) 662-6500
maxbrauer@hoskinslaw.com

*Counsel for Appellant*
*Kharyn Ramsay*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. _____     Caption: _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____
(name of party/amicus)

_____

who is _____, makes the following disclosure:
       (appellant/appellee/amicus)

1.      Is party/amicus a publicly held corporation or other publicly held entity?     YES    NO

2.      Does party/amicus have any parent corporations?           YES    NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?           YES    NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation (Local Rule 26.1(b))?          YES     NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)     YES     NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?                    YES     NO
      If yes, identify any trustee and the members of any creditors' committee:

Signature: _____          Date: _____

Counsel for: _____

## CERTIFICATE OF SERVICE
****************************

I certify that on _____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

_____          _____
        (signature)                                  (date)

07/19/2012
SCC

- 2 -

# <u>TABLE OF CONTENTS</u>

Page

CORPORATE DISCLOSURE

TABLE OF AUTHORITIES ................................................................. ii

STATEMENT OF SUBJECT MATTER AND
APPELLATE JURISDICTION ............................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW .....................................1

STATEMENT OF THE CASE............................................................2

STATEMENT OF FACTS .............................................................3

SUMMARY OF ARGUMENT ..........................................................8

ARGUMENT ............................................................................11

    A.    STANDARD OF REVIEW ................................................11

    B.    DISCUSSION OF ISSUES ................................................13

        1.    The Modifications of the DC/CV 32 and DC/CV 33 Forms
            Violate the FDCPA Because They Deceive the Least
            Sophisticated Consumer Into Ignoring Court Orders ..............16

            a.    The Defendants' Modifications Are False and
                Misleading Representations that Overshadow Court
                Orders and Lull Consumers into Inaction ......................16

            b.    The Defendants' Modifications Are Unfair and
                Unconscionable Because They Are an Affront to the
                Public Policy Against Imprisment for Debt ..............22

            c.    Section 1692e(11) Does Not Require Defendants to
                Modify a Court Order ......................................24

i

2.      Sawyer is a Debt Collector Governed by the FDCPA Because it is an Ordinary Agent Collecting on Behalf of Its Principal, Landlord SRH Woodmoor, LLC.............................30

3.      Defendants Violated the FDCPA by Collecting Debts When Sawyer is an Unlicensed Collection Agency............................34

4.      Sawyer is Vicariously Liable for the FDCPA Violations of Tapper .......................................................................38

CONCLUSION .................................................................41

REQUEST FOR ORAL ARGUMENT .................................42

CERTIFICATE OF COMPLIANCE......................................43

CERTIFICATE OF FILING AND SERVICE .........................44

ADDENDUM ...................................................................45

# TABLE OF AUTHORITIES

## CASES

Ainslie v. Inman,
      265 Va. 347, 577 S.E.2d 246 (Va. 2003)...................................................... 25-26

Ashcroft v. Iqbal,
      556 U.S. 662 (2009).........................................................................12

Bass v. E.I. DuPont de Nemours & Co.,
      324 F.3d 761 (4th Cir. 2003) ...........................................................13

Bell Atlantic Corp. v. Twombly,
      550 U.S. 544, 127 S. Ct. 1955 (2007) ................................................11, 12, 13

Bicking v. Mitchell Rubenstein & Associates, P.C.,
      2011 WL 5325674 (E.D. Va. Nov. 3, 2011) ....................................................18

Blum v. Fisher & Fisher,
      961 F. Supp. 1218 (N.D. Ill. 1997)....................................................22

Boccone v. America Express Co.,
      2007 WL 2914909 (D. Md. Oct. 4, 2007) ......................................................30

Boyce Motor Lines, Inc. v. U.S.,
      342 U.S. 337, 72 S. Ct. 329, 96 L. Ed. 367 (1952) .........................................20

Braden v. Wal-Mart Stores, Inc.,
      588 F.3d 585 (8th Cir. 2009) ...........................................................12

Bradshaw v. Hilco Receivables, LLC,
      765 F. Supp. 2d 719 (D. Md. 2011)....................................................31, 35, 36

Brown v. Lanham Ford Inc.,
      2010 WL 313253 (D. Md. Jan. 20, 2010).......................................................15

Carroll v. State,
      65 Md. 551, 3 A. 29 (Md. 1885)....................................................39

Casewell v. Cross,
    120 Mass. 545 (1876) ...................................................................40

Chao v. Ballista,
    630 F. Supp. 2d 170 (D. Mass. 2009).........................................13

Charles of the Ritz Distributings Corp.v. Federal Trade Commission,
    143 F.2d 676 (2d Cir. 1944) ........................................................18

Clark v. Capital Credit & Collection Services, Inc.,
    460 F.3d 1162 (9th Cir. 2006) .....................................................15

Clomon v. Jackson,
    988 F.2d 1314 (2d Cir. 1993) ......................................................18

Dikun v. Streich,
    369 F. Supp. 2d 781 (E.D.Va. 2005) ...........................................15

Drennan v. Van Ru Credit Corp.,
    950 F. Supp. 858 (N.D. Ill. 1996)................................................19

Drisol v. Household Credit Services, Inc.,
    989 S.W.2d 72 (Tex. App. 1998) ................................................40

In re Estate of Bonham,
    817 A.2d 192 (D.C. 2003) ...........................................................24

FTC v. Colgate-Palmolive Co.,
    380 U.S. 374, 85 S. Ct. 1035, 13 L. Ed. 2d 904 (1965) .................20

Federal Trade Commission v. Standard Education Social,
    302 U.S. 112 [(1937)].................................................................18

Florence Mfg. Co. v. J.C. Dowd & Co.,
    178 F. 73 (2nd Cir. 1910) ...........................................................17

Fontell v. Hassett,
    870 F. Supp. 2d 395 (D. Md. 2012).............................36, 37, 38, 39

iv

Garcia-Contreras v. Brock & Scott, PLLC,
    775 F. Supp. 2d 808 (M.D.N.C. 2011) ............................................................14

Gonzales v. Arrow Finance Services, LLC,
    660 F.3d 1055 (9th Cir 2011) .........................................................................18

Grant-Fletcher v. Brachfeld Law Corp., PC,
    2012 WL 2523094 (D. Md. June 28, 2012) ...................................................15

Hauk v. LVNV Funding, LLC,
    749 F. Supp. 2d 358 (D. Md. 2010).................................................28, 35, 36, 38

Hauk v. LVNV Funding, LLC,
    2010 WL 4395395 (D. Md. Nov. 5, 2010) .....................................................32

Heintz v. Jenkins,
    514 U.S. 291, 115 S. Ct. 1489, 131 L. Ed. 2d 395 (1995) ..............................31

Jeter v. Credit Bureau, Inc.,
    760 F.2d 1168 (11th Cir. 1985) ........................................................17, 20, 24

Johnson v. Riddle,
    305 F.3d 1107 (10th Cir. 2002) .......................................................................15

Kistner v. Law Offices of Michael P. Margelefsky, LLC,
    518 F.3d 433 (6th Cir. 2008) ..........................................................................20

Lamb v. Javitch, Block & Rathbone, LLP,
    2005 WL 4137786 (S.D. Ohio Jan. 24, 2005).................................................23

LeBlanc v. Unifund CCR Partners,
    601 F.3d 1185 (11th Cir. 2010) ....................................................23, 24, 31, 35

McCollough v. Johnson, Rodenburg & Lauinger, LLC,
    637 F.3d 939 (9th Cir. 2011) ............................................................18, 22, 23

McNeal v. Steinberger,
    135 P.2d 490 (Okla. 1943).............................................................................40

Miller v. Payco-General American Credits,
    943 F.2d 482 (4th Cir. 1991) ............................................................19

Monroe v. City of Charlottesville, Va.,
    579 F.3d 380 (4th Cir. 2009) ...........................................................13

Morante v. America General Finance Ctr.,
    157 F.3d 1006 (5th Cir. 1998) .........................................................40

Motherway v. Gordon,
    2010 WL 2803052 (W.D. Wash. July 15, 2010) reconsideration denied
    2010 WL 3061788 (W.D. Wash. July 30, 2010)..............................27

Patzka v. Viterbo College,
    917 F. Supp. 654 (W.D. Wis. 1996)................................................40

Peters v. General Serv. Bureau, Inc.,
    277 F.3d 1051 (8th Cir. 2002) .........................................................20

Reichart v. Nat'l Credit Systems, Inc.,
    531 F.3d 1002 (2008) ......................................................................18

Robbins v. Oklahoma,
    519 F.3d 1242 (10th Cir. 2008) .......................................................13

Rosenau v. Unifund Corp.,
    539 F.3d 218 (3d Cir. 2008) .......................................................18, 19

Russell v. Equifax A.R.S.,
    74 F.3d 30 (2d. Cir. 1996) ..............................................................19

Sayyed v. Wolpoff & Abramson,
    485 F.3d 226 (4th Cir. 2007) .......................................................28, 31

Smith v. United States,
    561 F.3d 1090 (10th Cir. 2009) .......................................................13

Southwestern Bell Telegraph Co. v. Wilson,
    768 S.W.2d 755 (Tex. App. 1988) ..................................................41

Sprinkle v. SB&C, Ltd.,
      472 F. Supp. 2d 1235 (W.D. Wash. 2006) ..................................................14, 15

State of Washington v. Barklind,
      87 Wash. 2d 814, 557 P.2d 314 (1976) .....................................................24

Taylor v. Checkrite, Ltd.,
      627 F. Supp. 415 (S.D. Ohio 1986) ...........................................................40

Wilson v. Quadramed Corp.,
      225 F.3d 350 (3rd Cir. 2000) .....................................................................19

Winemiller v. Worldwide Asset Purchasing, LLC,
      2011 WL 1457749 (D. Md. Apr. 15, 2011).................................................39

Zevgolis v. Greenberg Law Firm, P.C.,
      2011 WL 251024 (E.D. Va. Jan. 26, 2011) ............................................25, 28

## STATUTES

15 U.S.C. § 1692 et seq...............................................................................................1
15 U.S.C. § 1692(a) ...................................................................................................14
15 U.S.C. § 1692a(3) ...................................................................................................3
15 U.S.C. § 1692a(5) ...............................................................................................3, 35
15 U.S.C. § 1692a(6) ..............................................................................................30, 33
15 U.S.C. § 1692a(6)(C)............................................................................................26
15 U.S.C. § 1692a(6)(F)(iii) ......................................................................................33
15 U.S.C. § 1692(b) ...................................................................................................14
15 U.S.C. § 1692(e) .......................................................... 14, 16, 17, 21, 40, 41
15 U.S.C. § 1692e(5) .....................................................................11, 31, 32, 35
15 U.S.C. § 1692e(10) .........................................................................9, 16, 20
15 U.S.C. § 1692e(11) ...........................................................................passim
15 U.S.C. § 1692e(15) ................................................................................16, 21
15 U.S.C. § 1692(f) .........................................................11, 16, 22, 23, 35
15 U.S.C. § 1692(k) ...................................................................................................14
15 U.S.C. § 1693, et seq.............................................................................................1
28 U.S.C. § 1291 ........................................................................................................1
28 U.S.C. § 1331 ........................................................................................................1
28 U.S.C. § 1367(a) ....................................................................................................3

Md. Code Ann., Com. Law § 14-201 et seq ..............................................1
Md. Code Ann., Com. Law § 13-101 et seq ..............................................1
Md. Code, Business Regulation, § 7-101 ...........................................34, 35
Md. Code, Business Regulation, § 7-101(c) ...............................................35
Md. Code, Business Regulation, § 7-101(c)(1)(i) .......................................36
Md. Code, Business Regulation, § 7-101(e) ...............................................35
Md. Code, Business Regulation, § 7-301(a) ...............................................35

Va. Code § 8.01-506 ............................................................................25
Va. Code § 8.01-506(B) ......................................................................26

## RULES

Fed. R. Civ. Proc. 12(b)(6) ..................................................................23

## OTHER AUTHORITIES

Black's Law Dictionary 1526 (7th ed. 1999) ...........................................24

Bryson on Virginia Civil Procedure § 9.06[1][d] (4th ed. 2005) ..........................26

FTC Official Staff Commentary, 53 Fed. Reg. 50097, 50107
    (Dec. 13, 1988) ....................................................17, 21, 31, 34

S. Rep. No. 382, 95th Cong., 1st Sess. 4, at 4, reprinted in 1977
    U.S.C.C.A.N. 1695 ...................................................................17

S. Rep. No. 382, 95th Cong., 1st Sess. 3, at 3, reprinted in 1977
    U.S.C.C.A.N. 1695 ...................................................................33

## STATEMENT OF SUBJECT MATTER AND
## <u>APPELLATE JURISDICTION</u>

This appeal is taken from an order issued by the Honorable Richard D. Bennett of the United States District Court for the District of Maryland. The Amended Class Action Complaint filed by the Plaintiff alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 <u>et</u> <u>seq</u>., the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law §§ 14-201 <u>et</u> <u>seq</u>., and the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law §§ 13-101 <u>et</u> <u>seq</u>.  The basis for the District Court's subject matter jurisdiction is federal question jurisdiction pursuant to 28 U.S.C. §1331 and 15 U.S.C. §1693, <u>et</u> <u>seq</u>.

The basis for appellate jurisdiction is 28 U.S.C. § 1291. A final appealable order was issued on May 31, 2013. J.A. 149. Plaintiff filed a timely Notice of Appeal on June 20, 2013. J.A. 151.

## <u>STATEMENT OF ISSUES PRESENTED FOR REVIEW</u>

1.     Is the FDCPA violated when the debt collector unnecessarily modifies Court Orders directing the appearance of consumers at post judgment collection proceedings to state "THIS COMMUNICATION IS FROM A DEBT COLLECTOR. IT IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE?"

1

2.     Is a property manager that brings lawsuits as the agent of the creditor landlord a debt collector under the FDCPA?

3.     Is a property manager that brings lawsuits as the agent of the creditor landlord required to be licensed under the Maryland Collection Agency Licensing Act?

4.     Should a principal be held vicariously liable for its agent's violations of the FDCPA?

## STATEMENT OF THE CASE

Plaintiff filed her original Class Action Complaint and Demand for Jury Trial on September 13, 2012. J.A. 2. Defendant Jeffrey Tapper Attorney-at-Law ("Tapper") filed a motion to dismiss or in the alternative for summary judgment on October 22, 2012. J.A. 3. Defendant Sawyer Property Management of Maryland LLC ("Sawyer") filed a motion to dismiss for failure to state a claim on October 31, 2012. J.A. 3.

Plaintiff timely filed an Amended Complaint on November 7, 2012, along with a memorandum opposing the various motions filed by the Defendants. J.A. 3, 10-56. Defendant Tapper filed a motion to dismiss the Amended Complaint on November 13, 2013, J.A. 3, which the Plaintiff opposed on November 27, 2012. J.A. 4.

On May 31, 2013, the District Court granted the motions to dismiss the amended complaint and dismissed with prejudice the Plaintiff's FDCPA claims. J.A. 149. The District Court declined to exercise discretionary supplemental jurisdiction over the Plaintiff's remaining state law claims pursuant to 28 U.S.C. § 1367(a), and dismissed the MCDCA and MCPA claims without prejudice so that they could be refiled in Maryland state court. J.A. 149.

Plaintiff filed a timely Notice of Appeal challenging the dismissal with prejudice of her FDCPA claims. J.A. 151.

## STATEMENT OF FACTS

In her Amended Class Action Complaint, Kharyn Ramsay seeks redress on behalf of herself and a similarly situated class of individual consumers for the debt collection practices of Sawyer and Tapper. J.A. 10 at ¶1.

Every debt subject to this dispute is a "debt" as that term is defined by 15 U.S.C. § 1692a(5) of the FDCPA, because the debts arise from rental agreements entered into primarily for personal, family or household purposes. J.A. 11 at ¶3.

Kharyn Ramsay is and was at all times relevant, a "consumer" within the meaning of 15 U.S.C. § 1692a(3), because the Defendants sought to collect from her an alleged debt incurred for non-business purposes. J.A. 12 at ¶ 9.

Sawyer is "a rental agent for various landlords throughout Maryland including, without limitation, SRH Woodmoor LLC, the owner of a rental property

3

known as 'Gwynn Oaks I.'" J.A. 12 at ¶10. Sawyer is alleged to engage in the business of collecting debts alleged to be due another in the State of Maryland and to use the United States Mail in furtherance of its collection of debts alleged to be due another. Id.

Sawyer is not licensed as a collection agency with the State of Maryland, Department of Labor, Licensing and Regulation and is not exempt from collection agency licensing because it is not a licensed real estate broker or an individual acting on behalf of a licensed real estate broker. Id.

Tapper is alleged to be a Maryland sole proprietorship law firm engaged in the business of collecting debts alleged to be due another in the State of Maryland. J.A. 13 at ¶ 11. Tapper uses the United States Mail in furtherance of its collection of debts alleged to be due another and holds an active collection agency license with the State of Maryland, Department of Labor, Licensing and Regulation. Id.

The Plaintiff alleges that the Defendants routinely commandeer the criminal justice system to collect debts through deceptive practices. Sawyer retained Tapper to bring collection lawsuits in the District Court of Maryland, many of which resulted in judgments by default. J.A. 15 at ¶¶ 18-19. Once these judgments are entered, Defendants rely almost exclusively on Maryland Rule 3-633(b) to attempt to obtain an oral examination of the judgment debtor before a state court judge. J.A. 15 at ¶ 20.

4

A judgment creditor wishing to obtain an oral examination is required to complete form "DC/CV 32." J.A. 16 at ¶ 21; J.A. 52. The judgment creditor completes the top part of the form, which is titled "Request for Order Directing Defendant to Appear for Examination in Aid of Enforcement of Judgment (3-633) (Oral)." Id. A clerk of the District Court reviews the requests and completes the lower half of the form, which is titled "Order of the Court." Id. After approval by the court, a judge of the District Court's signature stamp is applied to the form. Id. At this point the DC/CV 32 becomes an order of the District Court of Maryland directing that the judgment debtor appear at a scheduled time for an oral examination before a judge of the District Court. J.A. 16 at ¶ 22.

If a judgment debtor fails to appear for the oral examination, the judgment creditor can obtain a Show Cause Order for Contempt, pursuant to Maryland Rule 3-633. J.A. 16 at ¶ 23.

A judgment creditor wishing to obtain a Show Cause Order for Contempt is required to complete form "DC/CV 33." J.A. 16 at ¶ 24; J.A. 50. The judgment creditor completes the top part of the form, which is titled "Request for Show Cause Order for Contempt (3-633) (SHOR)." Id. A clerk of the District Court reviews the request and completes the lower half of the form, which is titled "Show Cause Order for Contempt." Id. After approval by the court, a judge of the District Court's signature stamp is applied to the form. Id. At this point the DC/CV 33

becomes an order of the District Court of Maryland directing that the judgment debtor appear at a scheduled time to show cause why he or she should not be held in contempt for failure to appear for the ordered oral examination. J.A. 17 at ¶ 25.

If the judgment debtor fails to appear at the show cause hearing, a judgment creditor can request that the Court issue an "Attachment for Contempt" directing any "Peace Officer" to attach the body of the judgment debtor by placing the judgment debtor under arrest and delivering the judgment debtor to a judicial officer for a determination of the amount of bond, if any, that will be required before the judgment debtor may be released. J.A. 17 at ¶ 26. Sometimes a judgment creditor requests that the Court set a penalty amount of the bond equal to the amount of the judgment allegedly owed the Judgment Creditor. J.A. 17 at ¶ 27.

Sawyer and Tapper confuse judgment debtors by adding the following language to the top of the DC/CV 32 form:

> THIS COMMUNICATION IS FROM A DEBT COLLECTOR. IT IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

J.A. 17-18 at ¶ 28; J.A. 56.

This statement is false because the DC/CV 32 served upon the judgment debtor is not a communication from a debt collector. J.A. 18 at ¶ 29. Rather, it is an order of the District Court. Id.

These unauthorized changes to the DC/CV 32 form result in judgment

debtors sued by Sawyer and Tapper frequently failing to attend the ordered oral examinations. J.A. 18 at ¶ 30. These unauthorized changes to the DC/CV 32 form are misleading and confuse judgment debtors into thinking that the document is a communication from a debt collector, as opposed to a court's order. J.A. 18 at ¶ 31.

Sawyer and Tapper similarly confuse judgment debtors by adding the following language to the top of the DC/CV 33 form:

> THIS COMMUNICATION IS FROM A DEBT COLLECTOR. IT IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

J.A. 18 at ¶ 32; J.A. 56. This statement is false because the DC/CV 33 served upon the judgment debtor is a communication from the District Court and is not a communication from a debt collector. J.A. 18 at ¶ 33.

The changes to the DC/CV 33 form are misleading and confuse judgment debtors into thinking that the document is a communication from a debt collector, as opposed to a court's order, and have resulted in judgment debtors sued by Sawyer and Tapper frequently failing to attend the ordered show cause hearings. J.A. 19 at ¶¶ 34-35.

This course of conduct resulted in the arrest of Kharyn Ramsay. J.A. 19 at ¶ 36.

The amended complaint discussed the experiences of seventeen (17) other consumers with experiences strikingly similar to Ms. Ramsay's. In each case,

Defendants modified the DC/CV 32 and DC/CV 33 orders to include the language set forth above, usually in two places on the form. Each case ultimately resulted in the Court issuing Attachments for Contempt when the consumer failed to appear at a show cause hearing. J.A. 20-32.

These body attachments ultimately result in the consumers being arrested. For example, one consumer was arrested on April 19, 2012, and his bail was set at $2,500, only approximately $100 less than the judgment against the consumer. J.A. 22-23 at ¶¶ 51-54. In another case, a single mother who lives only with her children was arrested. J.A. 29-30 at ¶¶ 87-90.

The sheer volume of the missed court hearings under similar factual circumstances creates a strong inference that something more than a coincidence is at play here. For this reason, the data demonstrates that the theory of liability alleged by the Plaintiff was a plausible one and that her FDCPA claim should not have been dismissed under Rule 12(b)(6).

## SUMMARY OF ARGUMENT

The Defendants' modifications of the DC/CV 32 and DC/CV 33 forms violate the FDCPA because they overshadow court orders. Under the least-sophisticated-consumer standard that applies to FDCPA cases there is no requirement that intent to deceive be established because most of the FDCPA provides for strict liability. Truth is not a defense to a claim of deception and

8

partial truths and ambiguous statements are deceptive if the statement is subject to an interpretation or contains an implication with the capacity to deceive. Under this standard, the Plaintiff has adequately alleged a violation of § 1692e(10) because the statements

> THIS COMMUNICATION IS FROM A DEBT COLLECTOR.
> IT IS AN ATTEMPT TO COLLECT A DEBT AND ANY
> INFORMATION OBTAINED WILL BE USED FOR THAT
> PURPOSE.

are both false and deceptive. The first sentence is false, because the communication is not from the debt collector, but rather is an order issued by the District Court and therefore a communication of the court. This falsehood makes the statement deceptive to a least sophisticated consumer because it has the tendency to confuse the consumer into concluding that the document is not an order of the court and need not be acted upon.

Modifying the DC/CV 32 and DC/CV 33 forms in this manner overshadowed the fact that the documents were important court orders and had the potential of lulling the consumers into inaction after mistakenly concluding that the communication was from a debt collector, not the court.

The District Court committed reversible error because it concluded that the disclosure stamp added by the Defendants was required by § 1692e(11). There is no such requirement under §1692e(11) because those documents were communications from the state court and its clerks and not a debt collector. Even if

9

§ 1692e(11) were found to apply to court orders like the DC/CV 32 and DC/CV 33, the stamp is still deceptive because it states information beyond that which is required by the statute. The two part disclosure requirement of § 1692e(11), provides that only the <u>initial</u> written communication is to include the language that "any information obtained will be used" to assist in the collection of the debt. All subsequent communications are to state only "that the communication is from a debt collector." In this case the DC/CV 32 and DC/CV 33 orders were not the initial communication with the debtor and should not have included the statement that "any information obtained will be used for" the purpose of collecting a debt.

The deceptive nature of the Defendants' conduct is proven by its results as documented in detail in the Amended Complaint. In addition to the Plaintiff, the Amended Complaint identified seventeen other consumers who ultimately faced arrest for failing to appear for court hearings. In each case, Defendants modified the DC/CV 32 and DC/CV 33 orders to include the disclosure stamp language. Each case ultimately resulted in the state court issuing Attachments for Contempt when the consumer failed to appear at a show cause hearing.

For this reason, the conduct of the Defendants is also unfair and unconscionable because it affronts the strong public policy against imprisonment for debt.

Defendant Sawyer is a "debt collector" governed by the FDCPA. Although,

the FDCPA does not apply to creditors collecting debts in their own names, Sawyer does not qualify as the creditor because it is not the landlord. Rather, it was the rental agent and brought the lawsuit as an agent for the landlord. The District Court wrongly concluded that this case involved a creditor collecting debts in its own name because the factual record was clear that everything Sawyer did in this case was in the role of an agent, taking action for its principal, the landlord.

Because Sawyer is engaged in the business of collecting debts alleged to be due another in the State of Maryland, it was required to be licensed under by the Maryland Collection Agency Licensing Act. Despite not being licensed, Sawyer participated in the filing of collection lawsuits in violation of 15 U.S.C. § 1692e(5) and § 1692f.

Finally, even if Sawyer does not meet the FDCPA's definition of "debt collector," it is still vicariously liable for the FDCPA violations of Tapper because a principal is prima facie liable for the acts of its agent done in the general course of business authorized by it.

## **ARGUMENT**

### A.   **STANDARD OF REVIEW**

Plaintiff appeals an order granting motions to dismiss.

In resolving such motions, all factual allegations in the complaint must be assumed true. See, e.g., Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.

Ct. 1955, 1964 (2007). The facts must be construed in the light most favorable to the plaintiff, and all reasonable inferences must be drawn in the plaintiff's favor. See, e.g., Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 595 (8th Cir. 2009) (holding, post-Ashcroft v. Iqbal, 556 U.S. 662 (2009), that a district court erred by "ignor[ing] reasonable inferences supported by the facts alleged" and by drawing "inferences in [defendants'] favor").

To the extent that the Supreme Court suggested that "conclusory" allegations need not be taken as true, it closely limited its holding to allegations that simply mirror the elements of a cause of action without any further factual amplification. See, e.g., Iqbal, 556 U.S. at 681. Every complaint includes at least some conclusory language because all complaints, by necessity, recite the legal elements of the plaintiff's claims. Neither Twombly nor Iqbal provide support for an argument that a complaint may be dismissed simply because it includes some conclusory statements. Instead, both cases make clear that in order to justify dismissal, a defendant must satisfy Twombly and Iqbal's second step by showing that the plaintiff's claim is so far-fetched as to be implausible. See, e.g., Id. (holding that the plaintiff's complaint should have been dismissed because it was implausible, not because it contained conclusory allegations); Twombly, 550 U.S. at 564-69 (same).

A court may not dismiss a complaint because it disbelieves the plaintiff's

factual allegations. <u>See</u> <u>Twombly</u>, 550 U.S. at 556. In fact, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and that a recovery is very remote and unlikely." <u>Id</u>. (internal quotation marks omitted).

Thus, notice pleading remains the rule, <u>see</u>, <u>e.g.</u>, <u>Chao v. Ballista</u>, 630 F. Supp. 2d 170, 177 (D. Mass. 2009), and the principal purpose of Rule 8 is to provide adequate notice to the defendant so that he or she may prepare an answer. Neither <u>Twombly</u> nor <u>Iqbal</u> imposed a heightened fact-pleading regime. <u>See</u>, <u>e.g.</u>, <u>Smith v. United States</u>, 561 F.3d 1090, 1103 (10th Cir. 2009) ("heightened fact pleading" was "expressly rejected") (quoting <u>Robbins v. Oklahoma</u>, 519 F.3d 1242, 1247 (10th Cir. 2008)).

"An order granting dismissal under Rule 12(b)(6) is reviewed de novo taking 'the factual allegations in the complaint as true.'" <u>Monroe v. City of Charlottesville, Va.</u>, 579 F.3d 380, 385 (4th Cir. 2009) (quoting <u>Bass v. E.I. DuPont de Nemours & Co.</u>, 324 F.3d 761, 764 (4th Cir. 2003)).

## B.   <u>DISCUSSION OF ISSUES</u>

In enacting the FDCPA, the United States Congress found that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, marital instability, to the loss of jobs, and to invasions of individual

13

privacy." 15 U.S.C. § 1692(a). Congress also found that existing laws and procedures for redressing debt collection activities were inadequate to protect consumers. 15 U.S.C. § 1692(b). Congress enacted the FDCPA to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote uniform State action to protect consumers against debt collection abuses. 15 U.S.C. § 1692(e).

The FDCPA is a comprehensive statute that prohibits a catalog of activities in connection with the collection of debts by third parties. The FDCPA imposes civil liability on any person or entity that violates its provisions and establishes general standards of debt collector conduct, defines abuse, and provides for specific consumer rights. 15 U.S.C. § 1692(k). The operative provisions of the FDCPA declare certain rights to be provided to or claimed by debtors, forbid deceitful and misleading practices, prohibit harassing and abusive tactics, and proscribe unfair or unconscionable conduct, both generally and in a specific list of disapproved practices.

Because the FDCPA is a remedial statute, it is construed liberally in favor of the debtor. See, e.g., Garcia-Contreras v. Brock & Scott, PLLC, 775 F. Supp. 2d 808 (M.D.N.C. 2011); Sprinkle v. SB&C, Ltd., 472 F. Supp. 2d 1235 (W.D. Wash.

2006); Clark v. Capital Credit & Collection Servs., Inc., 460 F.3d 1162 (9th Cir. 2006); Johnson v. Riddle, 305 F.3d 1107 (10th Cir. 2002).

"In order to successfully make a claim under the FDCPA, a plaintiff must show that he or she has been the 'object of collection activity arising from consumer debt,' that the defendant is a debt collector governed by the FDCPA, and that the defendant has 'engaged in an act or omission prohibited by the FDCPA.'" Grant-Fletcher v. Brachfeld Law Corp., PC, 2012 WL 2523094 (D. Md. June 28, 2012) (quoting Dikun v. Streich, 369 F. Supp. 2d. 781, 784–85 (E.D.Va. 2005)). See also Brown v. Lanham Ford Inc., 2010 WL 313253, at *2 (D. Md. Jan. 20, 2010).

Plaintiff's Amended Class Action Complaint alleged two plausible substantive violations of the FDCPA. The first violation arises out the Defendants' practices of adding the following language to the top of the DC/CV 32 and DC/CV 33 forms served on consumers:

> THIS COMMUNICATION IS FROM A DEBT COLLECTOR. IT IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

See ECF 15 at ¶¶ 28, 32.

The second violation arises out of the failure of Sawyer to comply with the Maryland Collection Agency Licensing Act (MCALA). *See* ECF 15 at ¶ 10.

1. **The Modifications of the DC/CV 32 and DC/CV 33 Forms Violate the FDCPA Because They Deceive the Least <u>Sophisticated Consumer Into Ignoring Court Orders</u>.**

Plaintiff's Amended Complaint alleges that the modifications made to the DC/CV 32 and DC/CV 33 forms violate §§ 1692e, 1692e(10), 1692e(15), and 1692f of the FDCPA, which prohibit,

> § 1692e. False or misleading representations
>
> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section . . .
>
>> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.
>>
>> (15) The false representation or implication that documents are not legal process forms or do not require action by the consumer.
>
> § 1692f. Unfair practices
>
> A debt collector may not use unfair or unconscionable means to collect or attempt to collect.

a. **The Defendants' Modifications Are False and Misleading Representations that Overshadow Court <u>Orders and Lull Consumers into Inaction</u>.**

The first sentence of 15 U.S.C. § 1692e prohibits in broad terms the use of

false, deceptive, or misleading representations and collection means. This general provision is intended to cover deceptive collection acts and practices that do not fit the specific prohibitions given in the subsections of § 1692e. Congress recognized that it would be impossible to foresee every type of deceptive collection misbehavior and expressly provided this general standard to give courts the flexibility to proscribe improper conduct not specifically anticipated and addressed by the statute. According to the Senate report "this bill prohibits in general terms any harassing, unfair, or deceptive collection practice. This will enable the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed." S. Rep. No. 382, 95th Cong., 1st Sess. 4, at 4, reprinted in 1977 U.S.C.C.A.N. 1695, 1696. See also FTC Official Staff Commentary § 807, 53 Fed. Reg. 50097, 50105 (Dec. 13, 1988).

To accomplish the consumer protection purpose of the FDCPA, the courts apply a "least sophisticated" or "unsophisticated" consumer standard to analyze the protections the of the FDCPA. The Eleventh Circuit in Jeter v. Credit Bureau, Inc., 760 F.2d 1168 (11th Cir. 1985), relied heavily on Federal Trade Commission Act cases in describing the least sophisticated consumer standard:

> The law was not "made for the protection of experts, but for the public -- that vast multitude which includes the ignorant, the unthinking and the credulous," Florence Mfg. Co. v. J.C. Dowd & Co., 2 Cir., 178 F. 73, 75 [(1910]; and the "fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its

> power to deceive others less experienced." <u>Federal Trade Commission v. Standard Educ. Soc.</u>, 302 U.S. 112, 116 [(1937)].

*Id.* at 1173, quoting <u>Charles of the Ritz Distribs. Corp.v. Federal Trade Comm'n</u>, 143 F.2d 676, 679 (2d Cir. 1944). <u>See also</u> <u>Clomon v. Jackson</u>, 988 F.2d 1314, 1319 (2d Cir. 1993).

Under the least sophisticated consumer standard, many elements of common law fraud are irrelevant to a FDCPA claim for deception. There is no requirement that intent to deceive be established because most of the FDCPA provides for strict liability. <u>See</u>, <u>e.g.</u>, <u>McCollough v. Johnson, Rodenburg & Lauinger, LLC</u>, 637 F.3d 939, 953 (9th Cir. 2011) ("The FDCPA imposes strict liability on creditors, including liability 'for violations that are not knowing or intentional.'") (quoting <u>Reichart v. Nat'l Credit Systems, Inc.</u>, 531 F.3d 1002, 1005 (2008)); <u>Gonzales v. Arrow Fin. Servs., LLC</u>, 660 F.3d 1055, 1062 (9th Cir 2011) ("The FDCPA does not ordinarily require proof of intentional violation, and is a strict liability statute."); <u>Bicking v. Mitchell Rubenstein & Assocs., P.C.</u>, 2011 WL 5325674 (E.D. Va. Nov. 3, 2011) (FDCPA is a strict liability statute -- it focuses on debt collector's misconduct and not the unique extent of each debtor's harm).

Truth is not a defense to a claim of deception and partial truths and ambiguous statements are deceptive if the statement is subject to an interpretation or contains an implication with the capacity to deceive. <u>See</u> <u>Rosenau v. Unifund</u>

Corp., 539 F.3d 218, 221 (3d Cir. 2008) ("A debt collection letter is deceptive where it can be reasonably read to have two or more different meanings, one of which is inaccurate"); Drennan v. Van Ru Credit Corp., 950 F. Supp. 858 (N.D. Ill. 1996) (claim stated where unsophisticated consumer could interpret defendant's "legal review notification" and "notice of possible wage garnishment," despite frequent use of "may" and "might," as imminent threats when in fact no action was taken for over year after dunning letters were sent.).

Deception under the least sophisticated consumer standard is generally a question of law. See, e.g., Wilson v. Quadramed Corp., 225 F. 3d 350, 353 n. 2 (3rd Cir. 2000). If a debt collector's conduct is clearly deceptive, deception is a question of law. See, e.g., Miller v. Payco-General American Credits, 943 F. 2d 482, 484-85 (4th Cir. 1991). The gray area is when multiple interpretations exist. Some courts hold that if one interpretation would create an FDCPA violation, that is enough to trigger liability. See, e.g., Russell v. Equifax A.R.S., 74 F. 3d 30, 35 (2d. Cir. 1996) (finding collection notice deceptive as a matter of law even when "it can be reasonably read to have two or more different meanings, one of which is inaccurate.").

This approach is persuasive given the remedial nature of the FDCPA. Debt collectors should not be given a pass to craft language that has multiple interpretations, some which are deceptive and others which are not. In fact, it may

19

be the most nefarious debt collectors that craft language with flexible meanings in an attempt to deceive yet evade enforcement. As the Supreme Court has held in the general context of consumer protection, "it does not seem 'unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line.'" FTC v. Colgate-Palmolive Co., 380 U.S. 374, 393, 85 S. Ct. 1035, 1047, 13 L.Ed.2d 904 (1965) (quoting Boyce Motor Lines, Inc. v. U.S., 342 U.S. 337, 340, 72 S.Ct. 329, 330-31, 96 L.Ed. 367 (1952)).[1]

Under the least sophisticated consumer standard, the Plaintiff has adequately alleged a violation of § 1692e(10) because the statements

> THIS COMMUNICATION IS FROM A DEBT COLLECTOR. IT IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

are both false and deceptive. The first sentence is false, because the communication is not from the debt collector, but rather is an order issued by the state court and therefore a communication from and by that court and its clerks. This falsehood makes the statement deceptive to a least sophisticated consumer

---

[1] Other circuits hold that language subject to multiple interpretations is a question for the jury. See, e.g., Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1176 (11th Cir. 1985); Kistner v. Law Offices of Michael P. Margelefysky, LLC, 518 F.3d 433, 440-41 (6th Cir. 2008); Peters v. General Serv. Bureau, Inc., 277 F.3d 1051 (8th Cir. 2002). Under the reasoning from these cases, the District Court erred by resolving a jury question at the motion to dismiss phase.

because it has the tendency to confuse the debtors into concluding that the document is not an order of the court.

This is especially the case given that the stamp is placed in prominent locations on the forms and is the most conspicuous information set forth on the document.

The deceptive statement is "material" because the added language created confusion and ambiguity as to whether the document was a court order that required the debtor to take action or, instead, just another dunning communication from the debt collector that did not require that the debtor take action. This deception is highly material in that, as the concrete examples provided in the Amended Complaint demonstrated, it resulted in missed court appearances and eventual imprisonment. J.A. 20-32.

The Defendants also violated § 1692e(15) by falsely implying that the communication was not a court order. Section 1692e(15)provides that "the false representation or implication that documents are not legal process forms or do not require action by the consumer" constitutes a violation of § 1692e. Under this provision "[a] debt collector may not deceive a consumer into failing to respond to legal process by concealing the import of the papers, thereby subjecting the consumer to a default judgment." FTC Official Staff Commentary, 53 Fed. Reg. 50097, 50107 (Dec. 13, 1988).

21

Modifying the DC/CV 32 and DC/CV 33 forms to include the statements

THIS COMMUNICATION IS FROM A DEBT COLLECTOR. IT IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

overshadowed the fact that the documents were actually court orders. The modifications also had the potential of lulling the consumers into inaction after mistakenly concluding that the communication was from a debt collector, not the court. See McCollough v. Johnson, Rodenburg & Lauinger, LLC, 637 F.3d 939, 952 (9th Cir. 2011) (without specifically citing section 1692e(15), nonetheless holding that "the service of requests for admission containing false information upon a pro se defendant without an explanation that the requests would be deemed admitted after thirty days constitutes 'unfair or unconscionable' or 'false, deceptive, or misleading' means to collect a debt."); See also Blum v. Fisher & Fisher, 961 F. Supp. 1218 (N.D. Ill. 1997) (jury question existed as to whether a collection attorney's letter describing the foreclosure process was deceptive by potentially lulling the homeowner into inaction).

     **b.**    **The Defendants' Modifications Are Unfair and Unconscionable Because They Are an Affront to the <u>Public Policy Against Imprisonment for Debt</u>.**

Defendants' conduct also violates § 1692f which provides that "a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. This general prohibition covers all unfair or

unconscionable acts falling outside the specific acts or practices prohibited in the subsections of § 1692f.

The McCollough case, discussed above, found that conduct that could mislead a consumer into failing to take action was unfair and unconscionable. In Lamb v. Javitch, Block & Rathbone, LLP, 2005 WL 4137786 (S.D. Ohio Jan. 24, 2005), after MBNA obtained an arbitration award against the plaintiff, it filed a motion to confirm and enforce the arbitration award along with a request for an oral hearing. Under the applicable court rules, a hearing was supposed to be scheduled if requested. The debt collector law firm did not set a hearing and the court ultimately entered a default judgment against the debtor when no response was filed to the motion to confirm and enforce. The court held that these alleged facts stated a "colorable claim under the FDCPA, and are sufficient to overcome a Rule 12(b)(6) motion," which makes sense given that the request for the oral hearing could lead the debtor to conclude that nothing had to be done until the requested hearing was scheduled. Id. at *4.

In LeBlanc v. Unifund CCR Partners, 601 F.3d 1185 (11th Cir. 2010), the Eleventh Circuit supported its interpretation of § 1692f with the following definitions of "unfair" and "unconscionable:"

> The plain meaning of "unfair" is "marked by injustice, partiality, or deception." [Merriam-Webster Online Dictionary]. Significantly, in Jeter, we noted in dictum that in the FTC context, "[a]n act or practice is deceptive or unfair ... if it has

> the tendency or capacity to deceive." <u>Jeter</u>, 760 F.2d at 1172.
> The term "unconscionable" means "having no conscience";
> "unscrupulous"; "showing no regard for conscience";
> "affronting the sense of justice, decency, or reasonableness."
> BLACK'S LAW DICTIONARY 1526 (7th ed. 1999).

601 F.3d at 1200.

In this case, the conduct of the Defendants is unfair because it arises out of the deception caused by the manner in which the DC/CV 32 and DC/CV 33 forms were modified. This conduct is also unconscionable because it affronts the strong public policy against imprisonment for debt. <u>See</u>, <u>e.g.</u>, <u>In re Estate of Bonham</u>, 817 A.2d 192, 195 (D.C. 2003) ("contempt in general, and imprisonment in particular, are not appropriate means to enforce a money judgment."); <u>State of Washington v. Barklind</u>, 87 Wash.2d 814, 557 P.2d 314, 318 (1976) ("It is elementary that personal liberty transcends the obligation to pay a monetary sum in most circumstances.").

### c. Section 1692e(11) Does Not Require Defendants to Modify a Court Order.

The District Court erred by holding that Tapper made a safe decision in the face of uncertainty as to whether the forms at issue were required to be stamped pursuant to section 1692e(11). The District Court erred by creating such uncertainty itself rather than address the issue of what section 1692e(11) does and does not require. Uncertainty is harmful in the context of consumer protection because it permits unscrupulous debt collectors to take advantage of consumers

24

such as Plaintiff by cloaking their deceptive practices in the shroud of "legal uncertainty."

Here, uncertainty does not exist. Section 1692e(11) provides for two, distinct types of disclosures to consumers and does not require that these disclosures be included in a formal pleading made in connection with a legal action:

> (11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

15 U.S.C. § 1692e(11).

In this case, §1692e(11) did not require that the disclosure stamps be placed on the DC/CV 32 and DC/CV 33 forms because those documents were not communications from a debt collector. They were communications from the state court.  A case directly on point is <u>Zevgolis v. Greenberg Law Firm, P.C.</u>, 2011 WL 251024 (E.D. Va. Jan. 26, 2011), which holds that the § 1692e(11) notice is not required on court-issued documents because they are not communications from debt collectors:

> Here, however, Greenberg did not simply serve written discovery interrogatories on Zevgolis; rather, the Defendant sought to engage in the process of "debtor's interrogatories," as they are commonly called in Virginia practice. <u>See</u>, <u>e.g.</u>, <u>Ainslie</u>

25

v. Inman, 265 Va. 347, 577 S.E.2d 246, 248 (Va. 2003). The activity is a distinct statutory procedure authorized by Va. Code § 8.01-506, whereby a judgment creditor, having already prevailed in litigation, may seek to compel the judgment debtor to appear to orally answer questions about their assets. Unlike discovery interrogatories, the party employing the procedure may not craft written interrogatories and serve them directly on the judgment debtor. Rather, the judgment creditor requests the procedure from the clerk of the court who, in turn, issues a summons requiring the appearance of the judgment debtor. Va. Code § 8.01–506(B); see also W. Hamilton Bryson, Bryson on Virginia Civil Procedure § 9.06[1][d] (4th ed. 2005). Thus, the communication is issued in the form of a summons from the clerk of the court, not from the creditor itself. Indeed, the creditor has no control over the form or contents of the summons, except for the logistical information provided to the clerk (i.e. names, addresses, dates, times, amount of judgment, etc.).

Such is exactly the case here. Greenberg completed the form provided by the Hopewell, Virginia General District Court, and submitted it to the Clerk of the Court. (Compl.Ex. C.) The Clerk thereupon issued the summons to the Hopewell Sheriff's Office, which served it on Zevgolis at her former address by "posting" on the door of the residence. (Id. ¶ 10, 577 S.E.2d 246, Ex. C.) The summons was not a communication from Greenberg, but rather a summons issued by an authorized clerk of court performing official duties. As such, the clerk's communication is not the "initial written communication" between creditor and debtor because the clerk is not a "debt collector" as defined by the FDCPA. 15 U.S.C. § 1692a(6)(C). It is axiomatic that where the debt collector is not the one conveying the message, and has no control over the form of the message, such communication cannot constitute an "initial written communication" for FDCPA purposes.

Although the Court concludes that interrogatories themselves are not "formal pleadings" exempted from the FDCPA's "initial written communication" requirements, the Court finds that the Summons at issue did not constitute a

communication by a creditor subject to the strictures of the
FDCPA.

Id. at *3-*4.

Additionally, at least one district court has reasoned that all documents
created during the litigation process are covered by the "formal pleadings"
exception to § 1692e(11):

> Motherway focuses on the technical definition of "pleading,"
> arguing that it does not include litigation documents other than
> complaints, answers, and replies. CR 7. From this, he infers that
> subsequent litigation documents, such as motions for summary
> judgment and requests for admission, are not exempt from the
> requirement of notice that the communication is from a debt
> collector. While it is true that the statutory language can
> theoretically be construed in Motherway's favor, such an
> interpretation goes against common sense and will not be
> adopted by this court.
>
> Here, the initial communication between Gordon and
> Motherway contained all of the requisite information. [See
> Aylworth Aff., Dkt. # 21, at Ex. 1]. In the subsequent phone
> call Gordon identified itself as a debt collector. The summons
> and complaint subsequently served on Motherway did not
> include this language. This omission is specifically permitted
> under the FDCPA § 1692e(11) exemption for formal pleadings
> made in connection with litigation.
>
> It does not make sense that Gordon is required to re-affirm its
> status as a debt collector in subsequent, post-pleading litigation
> documents.

Motherway v. Gordon, 2010 WL 2803052 (W.D. Wash. July 15, 2010)
reconsideration denied, 2010 WL 3061788 (W.D. Wash. July 30, 2010).

Cases that hold that the § 1692e(11) disclosure is required for litigation-

27

related documents involve written discovery prepared by the debt collector and sent directly to the debtor. <u>See, e.g.</u>, <u>Hauk v. LVNV Funding, LLC</u>, 749 F. Supp. 2d 358, 367 (D. Md. 2010) (holding that because interrogatories were not "formal pleadings," plaintiffs had stated a valid claim under § 1692e(11) for failure to include the required notice); <u>but see</u> <u>Sayyed v. Wolpoff & Abramson</u>, 485 F.3d 226, 235 n. 2 (4th Cir. 2007) (where the Fourth Circuit expressly reserved decision on whether interrogatories should be considered "formal pleadings" under the FDCPA and reversed on other grounds the District Court's initial conclusion that interrogatories are "formal pleadings").

In this case, this Court need not decide the issue based upon an interpretation of the meaning of "formal pleadings" because the documents at issue here are state court orders that are not, by definition, communications from a debt collector subject to § 1692e(11). Therefore, as in <u>Zevgolis</u>, there was no requirement to include the § 1692e(11) statement on the DC/CV 32 and DC/CV 33 forms.

Even if § 1692e(11) were found to apply to court orders like the DC/CV 32 and DC/CV 33, the stamp is still deceptive because its states information beyond that which is required by the statute. The two part disclosure requirement of § 1692e(11), provides that only the <u>initial</u> written communication is to include the language that "any information obtained will be used" to assist in the collection of the debt. All subsequent communications are to state only "that the communication

is from a debt collector." Specifically, the DC/CV 32 and 33 orders were nowhere close to the initial communication with the debtor, if for no other reason than the fact that it came after the underlying collection complaint that also included the same stamp. J.A. 103. For this reason, there was no requirement to include "IT IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE" on the DC/CV 32 and 33 forms. Rather, even if § 1692e(11) applied the only information that should have been placed on the DC/CV 33 form was "THIS COMMUNICATION IS FROM A DEBT COLLECTOR."

This is not a trivial distinction because the purpose of the so-called "mini-miranda" provision of the FDCPA is to alert the consumer of the option to not aid in the debt collecting process by cooperating or volunteering information to a debt collector. By repeatedly stamping the full "mini-miranda" warning on court orders requiring an appearance in court, the Defendants deceived and confused consumers into concluding that they had the option of not responding to the court orders or otherwise cooperating with the debt collector's efforts to gather information.

The deceptive nature of the Defendants' conduct is proven by its results as documented in detail in the Amended Complaint. In addition to the Plaintiff, the Amended Complaint identified seventeen other consumers who ultimately faced arrest for failing to appear for court hearings. J.A. 20-32. In each case, Defendants

modified the DC/CV 32 and DC/CV 33 orders to include the disclosure stamp language. Id. Each case ultimately resulted in the Court issuing Attachments for Contempt when the consumer failed to appear at a show cause hearing. Id.

## 2. Sawyer is a Debt Collector Governed by the FDCPA Because it is an Ordinary Agent Collecting on Behalf of Its Principal, Landlord SRH Woodmoor, LLC.

The FDCPA defines "debt collector" to mean "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The District Court erred in ruling that the facts alleged in the Amended Complaint did not support the allegation that Sawyer's activities were governed by the FDCPA under either subpart of the definition.

Although, the FDCPA does not apply to creditors collecting debts in their own names, Boccone v. Am. Express Co., 2007 WL 2914909 (D. Md. Oct. 4, 2007), Sawyer does not qualify as the creditor because it is not the landlord. Rather, as alleged in the Amended Complaint, Sawyer is "a rental agent for various landlords throughout Maryland." J.A. 12 at ¶ 10. In fact, the collection lawsuit filed against Ms. Ramsay in state court identified the plaintiff as "Sawyer Property

Management of Maryland, LLC, <u>Agent for SRH Woodmoor, LLC</u>."). J.A. 103 (emphasis supplied).

Section 803(6)-1 of the FTC Official Staff Commentary explains that "debt collector" includes "a firm that regularly collects overdue rent on behalf of real estate owners, or periodic assessments on behalf of condominium owners on behalf of condominium associations," because it "regularly collects . . . debts owed or due another." 53 Fed. Reg. 50097, 50102 (Dec. 13, 1988). The conduct at issue in this case is limited to the activities of Sawyer in suing tenants for overdue rent and obligations owed to the landlord.

Courts have routinely held that filing a lawsuit to collect debts constitutes collection activity that is subject to the FDCPA. <u>See</u> <u>Heintz v. Jenkins</u>, 514 U.S. 291, 297, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995) (holding that litigation to collect a debt is collection activity under the FDCPA); <u>Sayyed v. Wolpoff & Abramson</u>, 485 F.3d 226, 230 (4th Cir. 2007) (explaining that the FDCPA applies when the debt-collecting activity is litigation); <u>LeBlanc v. Unifund CCR Partners</u>, 601 F.3d 1185, 1193 (11th Cir. 2010) (summarily rejecting debt collector's claim that filing lawsuits to collect debt is not "collection activity" under the FDCPA); <u>Bradshaw v. Hilco Receivables, LLC</u>, 765 F. Supp. 2d 719, 731 (D. Md. 2011) ("filing of lawsuits [by unlicensed collection agencies] against the class members constitutes 'a threat to take ... action that cannot legally be taken' in violation of 15 U.S.C. §

1692e(5). . .”); <u>Hauk v. LVNV Funding, LLC</u>, 2010 WL 4395395 (D. Md. Nov. 5, 2010) (“filing suit against defaulted debtors is a core business of debt collectors.”).

The District Court committed reversible error when it incorrectly concluded that Sawyer was the creditor based solely on its review of the DC/CV 32 and 33 forms where Tapper listed “Sawyer Property Management of MD, LLC” as the plaintiff in the caption. <u>See</u> J.A. 164. The District Court inferred that Sawyer was acting on its own behalf -- an inference favorable to the Defendant, not the Plaintiff. In fact, the underlying lawsuit, which was in the record before the District Court, set forth the full caption of the complaint and identified the plaintiff as “Sawyer Property Management of Maryland, LLC, <u>Agent for SRH Woodmoor, LLC</u>.” J.A. 103 (emphasis supplied). Thus, the District Court had a document before it stating that Sawyer was an agent collecting on behalf of its principal, or phrased otherwise, a debt collector who regularly collects debts on behalf of others.

Additionally, the District Court’s mistaken conclusion that “the collection lawsuit itself reflects that Tapper filed the action in Sawyer Property’s name” is another inference improperly drawn against the Plaintiff. The District Court inferred that since Tapper filed the action in Sawyer’s name, that this meant that Sawyer was collecting on its own behalf. The District Court chose to ignore the pleadings and the lawsuit itself, which made clear that the rent obligation at issue

32

was not owed to Sawyer and that Sawyer was pursuing Ms. Ramsay as the agent for the landlord, SRH Woodmoor, LLC, which was the entity owed the obligation. For example, the lease agreement attached to the collection lawsuit filed by Tapper identified the landlord as SRH Woodmoor LLC. ("This lease, made on October 16, 2007, whereby Sawyer Property Management of Maryland LLC agent for SRH Woodmoor LLC, hereinafter referred to as Landlord . . ."). J.A. 107.

Thus, the District Court wrongly concluded that this case involved a creditor collecting debts in its own name. The factual record was clear that everything Sawyer did in this case was in the role of an agent, taking action for its principal, SRH Woodmoor LLC. In other words, Sawyer regularly collected debts on behalf of another, SRH Woodmoor, LLC, and thus is a debt collector under § 1692a(6).

The District Court did not consider Sawyer's argument that it is excluded from coverage by the exemption found at § 1692a(6)(F)(iii):

> The term [debt collector] does not include--
>
> (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person. . .

The legislative history emphasizes that this exemption was included to apply to "mortgage service companies and others who service outstanding debts for others, so long as the debt were not in default when taken for servicing." S. Rep. No. 382, 95th Cong., 1st Sess. 3, at 3, reprinted in 1977 U.S.C.C.A.N. 1695, 1696

33

See also FTC Official Staff Commentary, 53 Fed. Reg. 50103 (explaining that the exemption found at § 803(6)(F)(iii) "applies to parties such as mortgage service companies whose business is servicing current accounts) (emphasis supplied). In such circumstances, the mortgage servicer "obtains" the rights to service the consumer pursuant to a formal arrangement.

In order for the exemption to apply in this case, Sawyer must first establish the terms and conditions upon which it "obtained" the accounts from the landlords, which is a factual issue that cannot be resolved at the motion to dismiss stage. Once this is established, Sawyer must also prove that the accounts were not in default when they were obtained.

### 3. Defendants Violated the FDCPA by Collecting Debts When Sawyer is an Unlicensed Collection Agency.

Though the District Court was not required to reach this issue because it already held that Sawyer was not a debt collector, it also noted that Sawyer was not required to be licensed under the Maryland Collection Agency Licensing Act ("MCALA"), Md. Code Ann., Bus. Reg. § 7-101, et seq. The District Court erred because Sawyer is engaged in the business of collecting debts alleged to be due another in the State of Maryland, and thus was required to be licensed under MCALA.

MCALA requires that "a person must have a license whenever the person does business as a collection agency in the State," id. at § 7-301(a), and defines "collection agency" as "a person who engages directly or indirectly in the business of: (1)(i) collecting for, or soliciting from another, a consumer claim. . ." Id. at § 7-101(c). A "consumer claim" is a claim that "arises from a transaction in which, for a family, household or personal purpose, the [Maryland] resident sought or got credit, money, personal property, real property, or services." Id. at § 7-101(e).

In Bradshaw v. Hilco Receivables, LLC, 765 F. Supp. 2d 719, 729 (D. Md. 2011), the U.S. District Court for the District of Maryland held that a "collection agency" that filed collection lawsuits without first obtaining the license required by MCALA violated FDCPA § 1692e(5). Additionally, bringing and threatening to bring litigation without having obtained a state debt collection license supports a claim under § 1692f of the FDCPA. See Hauk v. LVNV Funding, LLC, 749 F. Supp. 2d 358, 366 (D. Md. 2010) (holding that allegations that the defendant was debt collecting without a Maryland license stated a claim under § 1692f because "[a]s the Eleventh Circuit recently concluded, a debt collector's failure to register under a state debt collection law 'is an appropriate consideration in deciding whether [its] 'means' of collection were 'unfair or unconscionable.' ' ") (quoting LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1200 (11th Cir. 2010)).

In <u>Fontell v. Hassett</u>, The Management Group Associates, Inc. ("TMG") was the management agent for a homeowner association called Norbeck Grove Community Association, Inc. TMG managed "various aspects of the homeowner association, including enforcing debts and collection policies." <u>Id.</u> at 400. TMG was responsible for collecting homeowner association dues. <u>Id.</u> Since TMG collected these dues on behalf of another -- the homeowner association -- the court held that TMG was required to be licensed as a debt collector under MCALA, and since TMG operated without a license, it violated the MCDCA:

> Though it is a close call, this Court finds that as a matter of law, the management agent should be considered a third party under § 7–101(c)(1)(i) [Md. Code Ann, Bus. Reg.] when collecting debts on behalf of the homeowner association, since the parties were merely bound by contract and are indisputably separate entities. Thus, the management agent's actions in sending collection notices and filing a lien on Plaintiff's property would constitute doing business as a collection agency under the MCALA.

<u>Fontell v. Hassett</u>, 870 F. Supp. 2d 395, 409 (D. Md. 2012).

Read together, <u>Fontell</u>, <u>Bradshaw</u> and <u>Hauk</u> hold that an agent collecting funds due its principal must be licensed under MCALA and failing to obtain the required license constitutes a violation of the FDCPA.

This factual setting is present in this case. Specifically, the Amended Class Action Complaint alleges that Sawyer is a rental agent for various residential, noncommercial landlords throughout Maryland including SRH Woodmoor LLC.

J.A. 12. The Amended Complaint also alleges that Sawyer engages in the business of collecting debts alleged to be due another in the State of Maryland, and uses the United States Mail in furtherance of its collection of debts alleged to be due another. Id.[2]  The Amended Complaint alleges that Sawyer is not licensed as a collection agency with the State of Maryland, Department of Labor, Licensing and Regulation. Id. Finally, the lease agreement attached to the collection lawsuit filed by Tapper identified the landlord as SRH Woodmoor LLC. ("This lease, made on October 16, 2007, whereby Sawyer Property Management of Maryland LLC agent for SRH Woodmoor LLC, hereinafter referred to as Landlord . . ."). J.A. 107.

These allegations establish that the creditor in this case is the owner of the rental property, SRH Woodmoor, LLC, and that Sawyer acted as a rental agent collecting rents owed to SRH Woodmoor, LLC and suing tenants and former tenants to collect unpaid amounts alleged to be due to SRH Woodmoor, LLC. Because Sawyer is engaged in the business of collecting debts alleged to be due another in the State of Maryland, it was required to be licensed by MCALA.

These allegations are sufficient to trigger the MCALA licensing requirement recognized in Fontell. Since Sawyer acts as an agent for owners of rental property, it collects consumer claims for another and is therefore required to be licensed as a

_____

[2]  Sawyer is not exempt from collection agency licensing because it is not a licensed real estate broker or an individual acting on behalf of a licensed real estate broker.

collection agency. In other words, in this case Sawyer fulfilled the same role as to its principal (SRH Woodmoor, LLC) that TMG fulfilled as to the homeowner's association.[3]

Thus, Plaintiff's claim is not premised on the "mere fact that Sawyer is a property management company" but rather on the fact that Sawyer was engaged to collect a debt from the Plaintiff on behalf of SRH Woodmoor, LLC. Having failed to obtain a collector's license as required by MCALA, Sawyer violated the FDCPA when it sued the Plaintiff.

### 4.    Sawyer is Vicariously Liable for the FDCPA Violations of Tapper.

At the outset, case law holds that if Sawyer is determined to be a debt collector, it will be vicariously liable for Tapper's deceptive modification of court orders. In Hauk v. LVNV Funding, LLC, 749 F. Supp. 2d 358 (D. Md. 2010), the court held that a principal debt collector is liable for their debt collecting attorney's violations of the FDCPA. See id. at 366-67 ("It is unlikely Congress intended to permit a debt collector to avoid liability for violations of the FDCPA disclosure requirements simply by hiring a law firm to make court filings that would otherwise be subject to the statute.").

---

[3]    The District Court mis-analogized Fontell by concluding that Sawyer was analogous to the homeowner association in Fontell because Sawyer was not authorized to collect the debt in its own name

Even if Sawyer does not meet the FDCPA's definition of "debt collector," it is still vicariously liable for the FDCPA violations of Tapper. "Under Maryland law, . . . '[a] principal is prima facie liable for the acts of his agent done in the general course of business authorized by him.'" Winemiller v. Worldwide Asset Purchasing, LLC, 2011 WL 1457749 (D. Md. Apr. 15, 2011) (quoting Carroll v. State, 65 Md. 551, 3 A. 29, 29 (Md. 1885)). In Winemiller, this Court rejected an argument by a debt buyer that it was not attempting to collect debts under the MCDCA because it referred the debts to licensed attorneys to file the lawsuits, explaining that "[u]nder the legal principles of Maryland agency law discussed above, Plaintiffs may still be able to hold Defendants liable even if they hired a third-party to pursue the debt collection claims." Winemiller v. Worldwide Asset Purchasing, LLC, 2011 WL 1457749 (D. Md. Apr. 15, 2011).

The District Court rejected this argument, relying on the reasoning in an earlier case from the District of Maryland, Fontell v. Hassett, 870 F. Supp. 2d 395 (D. Md. 2012) which required that both the principal and the agent meet the FDCPA's definition of debt collector in order for there to be vicarious liability. The reasoning of Fontell adopted by the District Court below was that vicarious liability should not attach because "there is no concern in this case that Sawyer Property employed Tapper to avoid compliance with the FDCPA. . ." J.A. 166.

This reasoning is not consistent with the underlying purpose of the FDCPA to eliminate abusive debt collection practices by debt collectors. 15 U.S.C. § 1692(e).

First, numerous cases have found a collection agency to be an agent for which the creditor is responsible. E.g., Patzka v. Viterbo College, 917 F. Supp. 654 (W.D. Wis. 1996) (finding collection agency to be agent of college resulting in the college's liability under a state statute for the collector's demands for illegal fees and interest); Casewell v. Cross, 120 Mass. 545 (1876) (creditor liable for false arrest of debtor by collection agency which advertised it would collect by treating debtors "with delicacy, so as not to offend them, or with such severity as to show that no trifling is intended"); McNeal v. Steinberger, 135 P.2d 490 (Okla. 1943) (collection agency owed fiduciary duty of an agent to creditor); Drisol v. Household Credit Servs., Inc., 989 S.W.2d 72 (Tex. App. 1998) (while agency's death threats and job contacts were beyond the scope of its duties, Household could have ratified the agency's abuses as found by the jury); Morante v. Am. Gen. Fin. Ctr., 157 F.3d 1006 (5th Cir. 1998) (where a collection subsidiary of a finance company had the right of control over a debt collection agency, the subsidiary was liable for punitive damages resulting from the agency's debtor harassment); Taylor v. Checkrite, Ltd., 627 F. Supp. 415 (S.D. Ohio 1986) (Checkrite, a collector on dishonored checks and a credit reporting agency, was responsible for the FDCPA violations of its franchisee agents where Checkrite exercised control over the

activities of the franchise which resulted in the violations); <u>Southwestern Bell Tel. Co. v. Wilson</u>, 768 S.W.2d 755 (Tex. App. 1988) (creditor was held responsible under agency principles for torts committed by private attorney retained for collection efforts; the attorneys, in turn, were held responsible for torts committed by constable and deputy in the course of an execution and levy).

Under the District Court's reasoning, creditors will be insulated from liability for even the most egregious illegal debt collecting activity of their agents. Limiting the reach of vicarious liability would create an incentive for a creditor to hire aggressive, rogue or unlicensed debt collectors willing to violate the FDCPA. Extending vicarious liability to creditors not only is consistent with the common law application of the doctrine, but would create an incentive for creditors to police their debt collectors and drive the illegal debt collectors from the market place, which also serves another stated purpose of the FDCPA by insuring that those debt collectors who refrain from using abusive debt collection practices are not placed at a competitive disadvantage. <u>See</u> 15 U.S.C. § 1692(e).

<u>**CONCLUSION**</u>

For the reasons stated, Plaintiff requests that the Court of Appeals reverse the order of the District Court dismissing her FDCPA claims with prejudice and remand the case to the District of Maryland.

## REQUEST FOR ORAL ARGUMENT

Plaintiff requests oral argument because the District Court's rulings involve questions of first impression. Until this case, no court has held that the disclosure requirements of 15 U.S.C. § 1692e(11) may be used to shield or otherwise excuse false and deceptive conduct that overshadows orders issued by state trial courts in post judgment discovery proceedings. This case also involves the novel legal issue of whether a rental agent is a creditor not subject to the FDCPA when it lists its name as the plaintiff in the debt collection lawsuit while also indicating that it is acting as the agent for the landlord.

Respectfully Submitted.


*/s/ E. David Hoskins*
E. David Hoskins
The Law Offices of E. David Hoskins, LLC
16 E. Lombard Street, Suite 400
Baltimore, Maryland 21202
*Counsel for Appellant*


*/s/ Max F. Brauer*
Max F. Brauer
The Law Offices of E. David Hoskins, LLC
16 E. Lombard Street, Suite 400
Baltimore, Maryland 21202
*Counsel for Appellant*

42

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that:

1. This brief has been prepared with Word, using a proportionally spaced serif typeface, Times New Roman, 14 point font.

2. Exclusive of: table of contents; table of authorities; any addendum containing statutes, rules, or regulations; and the certificate of service this brief contains <u>10,073</u> words.

3. I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions. If the Court so directs, I will provide an electronic version of the brief and/or copy of the word or line printout.

*/s/ E. David Hoskins*
E. David Hoskins
The Law Offices of E. David Hoskins, LLC
16 E. Lombard Street, Suite 400
Baltimore, Maryland 21202
*Counsel for Appellant*


*/s/ Max F. Brauer*
Max F. Brauer
The Law Offices of E. David Hoskins, LLC
16 E. Lombard Street, Suite 400
Baltimore, Maryland 21202
*Counsel for Appellant*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

On the 30th day of September, 2013, I filed the required copies of the foregoing OPENING BRIEF OF APPELLANT with the Clerk of Court via hand delivery and electronically using the CM/ECF system, which will send a notice of electronic filing to:

Geoffrey M. Gamble
Donald A. Rea
SAUL EWING, LLP
500 East Pratt Street, Suite 800
Baltimore, MD 21202-3171
ggamble@saul.com
drea@saul.com
*Counsel for Appellee*
*Sawyer Property Management of Maryland LLC*

James E. Dickerman
Lauren Elizabeth Marini
ECCLESTON & WOLF, PC
7240 Parkway Drive, 4th Floor
Hanover, MD 21076
dickerman@ewmd.com
marini@ewmd.com
*Counsel for Appellee*
*Jeffrey Tapper*

*/s/ E. David Hoskins*
E. David Hoskins
The Law Offices of E. David Hoskins, LLC
16 E. Lombard Street, Suite 400
Baltimore, Maryland 21204
*Counsel for Appellant*

*/s/ Max F. Brauer*
Max F. Brauer
The Law Offices of E. David Hoskins, LLC
16 E. Lombard Street, Suite 400
Baltimore, Maryland 21204
*Counsel for Appellant*

44

**ADDENDUM**

**15 U.S.C. § 1692a**. Definitions

(3) The term "consumer" means any natural person obligated or allegedly obligated to pay any debt.

\*          \*          \*

(6) The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. The term does not include--

(A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor;

(B) any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts;

(C) any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties;

(D) any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt;

(E) any nonprofit organization which, at the request of consumers, performs bona fide consumer credit counseling and assists consumers in the

liquidation of their debts by receiving payments from such consumers and distributing such amounts to creditors; and

(F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

**15 U.S.C. § 1692e**. False or misleading representations

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section . . .

\*      \*      \*

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

\*      \*      \*

(11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

\*      \*      \*

(15) The false representation or implication that documents are not legal process forms or do not require action by the consumer.

46

**15 U.S.C. § 1692f**. Unfair practices

>A debt collector may not use unfair or unconscionable means to collect of attempt to collect.

**Md. Code, Business Regulation, § 7-101**. Definitions

\*     \*     \*

(c) "Collection agency" means a person who engages directly or indirectly in the business of:

>(1)(i) collecting for, or soliciting from another, a consumer claim; or

>(ii) collecting a consumer claim the person owns, if the claim was in default when the person acquired it;

>(2) collecting a consumer claim the person owns, using a name or other artifice that indicates that another party is attempting to collect the consumer claim;

>(3) giving, selling, attempting to give or sell to another, or using, for collection of a consumer claim, a series or system of forms or letters that indicates directly or indirectly that a person other than the owner is asserting the consumer claim; or

>(4) employing the services of an individual or business to solicit or sell a collection system to be used for collection of a consumer claim.

(d) "Commissioner" means the Commissioner of Financial Regulation.

(e) "Consumer claim" means a claim that:

>(1) is for money owed or said to be owed by a resident of the State; and

>(2) arises from a transaction in which, for a family, household, or personal purpose, the resident sought or got credit, money, personal property, real property, or services.

47

(f) "License" means a license issued by the Board to do business as a collection agency.

\*     \*     \*

**<u>Md. Code, Business Regulation, § 7-301</u>**. License required

(a) Except as otherwise provided in this title, a person must have a license whenever the person does business as a collection agency in the State.

(b) This section does not apply to:

(1) a regular employee of a creditor while the employee is acting under the general direction and control of the creditor to collect a consumer claim that the creditor owns; or

(2) a regular employee of a licensed collection agency while the employee is acting within the scope of employment.