RECORD NO. 13-1795

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

KHARYN RAMSAY,

*Plaintiff-Appellant,*

v.

SAWYER PROPERTY MANAGEMENT OF MARYLAND, LLC; and
JEFFREY TAPPER, ATTORNEY-AT-LAW

*Defendants –Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND AT BALTIMORE
Civil Action No. 1:12-cv-02741-RDB
The Honorable Richard D. Bennett

CONSOLIDATED RESPONSE BRIEF
OF DEFENDANTS-APPELLEES

Donald A. Rea
Geoffrey M. Gamble
SAUL EWING LLP
500 East Pratt Street, Suite 800
Baltimore, Maryland 21202
(410) 332-8600

*Counsel for Sawyer Property
Management of Maryland, LLC*

James E. Dickerman
Lauren E. Marini
ECCLESTON & WOLF, PC
7240 Parkway Drive, 4th Floor
Hanover, Maryland 21076
(410) 752-7474

*Counsel for Jeffrey Tapper, Attorney-
at-Law*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __13-1795__    Caption: <u>Kharyn Ramsay v. Sawyer Property Management of Maryland, LLC</u> et al

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Sawyer Property Management of Maryland, LLC__
(name of party/amicus)

_____

who is _____an appellee_____, makes the following disclosure:
      (appellant/appellee/amicus)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.  Does party/amicus have any parent corporations?  ☐ YES ☑ NO
    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
    If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Geoffrey M. Gamble            Date: _____ July 8, 2013 _____

Counsel for: Sawyer Property Management of MD

## CERTIFICATE OF SERVICE
***************************

I certify that on ____ July 8, 2013 ____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Geoffrey M. Gamble                    July 8, 2013
_____            _____
(signature)                                    (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No.  13-1795          Caption: Ramsay v. Sawyer Property Management of Maryland LLC, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Jeffrey Tapper, Esq.
(name of party/amicus)


who is _____ Appellee _____ , makes the following disclosure:
        (appellant/appellee/amicus)


1.    Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO


2.    Does party/amicus have any parent corporations?                             ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:



3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                              ☐ YES ☑ NO
      If yes, identify all such owners:

- 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☑YES☐NO
    If yes, identify entity and nature of interest:

    National Union Fire Insurance Company and American International Group, Inc. (AIG) have an
    interest in the outcome of this litigation as Jeffrey Tapper's malpractice insurance carriers.

5.  Is party a trade association? (amici curiae do not complete this question)    ☐YES☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?    ☐YES☑NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/James E. Dickerman                    Date:    June 25, 2013

Counsel for: Appellee Jeffrey Tapper, Esq.

## CERTIFICATE OF SERVICE
****************************

I certify that on    June 26, 2013    the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

E. David Hoskins, Esq.                    Donald A. Rea, Esq.
The Law Offices of E. David Hoskins       Saul Ewing LLP
2 Hamill Road, Suite 362                  500 East Pratt Street, 8th Floor
Baltimore, MD 21210                       Baltimore, MD 21202

/s/James E. Dickerman                              June 26, 2013
       (signature)                                    (date)

# **TABLE OF CONTENTS**

JURISDICTIONAL STATEMENT ................................................................ 1

COUNTER-STATEMENT OF THE ISSUES PRESENTED .................................. 1

COUNTER-STATEMENT OF THE CASE ...................................................... 2

    I.   The Proceedings Below ............................................................ 2

    II.  The District Court's Decision .................................................. 4

COUNTER-STATEMENT OF FACTS ........................................................... 5

    I.   Defendants' General Collection Efforts ................................... 5

    II.  Defendants' Efforts to Collect Appellant's Debt ...................... 7

SUMMARY OF ARGUMENT ...................................................................... 9

ARGUMENT ........................................................................................... 12

    I.   Sawyer is Not a "Debt Collector" Within the Meaning
        of the FDCPA ........................................................................ 12

        A.   Sawyer is a Creditor Whose Primary Business is Not Debt
            Collection ...................................................................... 13

            1.  Sawyer is a Creditor that Collects its Own Debts ...................... 13

            2.  Sawyer's Primary Business is Not Debt Collection ................. 17

        B.   Alternatively, Sawyer is Exempt from FDCPA Liability Because
            Sawyer Obtained the Right to Collect the Debt Prior to Default.... 17

    II.  Sawyer Cannot Be Found Vicariously Liable Under the FDCPA for
        Tapper's Conduct .................................................................. 22

    III. The Debt Disclosures Included on the DC/CV 32 and DC/CV
        33 Forms Do Not Violate the FDCPA .................................... 24

i

A.  The Debt Disclosures Were Neither False Nor Misleading............25

    1. The Disclosure Stamp Was Not Misleading.............................26

    2. The Disclosure Stamp Did Not Constitute a False Statement...30

B.  The Placement of the Disclosure Stamp on the DC/CV 32 and DC/CV 33 Forms Does Not Violate §1692f of the FDCPA...........35

IV. Sawyer Was Not Required to Obtain a Maryland Collection Agency License and, Therefore, its Collection Efforts Did Not Violate the FDCPA ......................................................................................37

CONCLUSION ......................................................................................42

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Blum v. Fisher & Fisher*, 961 F. Supp. 1218 (N.D. Ill. 1997) ................................ 30

*Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d
719 (D. Md. 2011).. ..................................................................... 37, 40, 41

*Carter v. AMC, LLC*, 645 F.3d 840 (7th Cir. 2011) .................................... 18, 19, 20

*Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632 (7th Cir. 2004) ............ 15

*Fontell v. Hassett*, 870 F. Supp. 2d 395 (D. Md. 2012) ................................... *passim*

*Foti v. NCO Fin. Sys.*, 424 F. Supp. 2d 643 (S.D.N.Y. 2006) ................................ 36

*Franceschi v. Mautner-Glick Corp.*,
22 F. Supp. 2d 250 (S.D.N.Y. 1998) ....................................................... 18, 19, 20

*Givens v. Citimortgage, Inc.*, CIV. PJM 10-1249, 2011 WL 806463 (D. Md.
Feb. 28, 2011) ................................................................................... 21

*Hauk v. LVNV Funding, LLC*, 749 F. Supp.2d. 358 (D. Md. 2010) ..... 33, 34, 40, 41

*Holly Hill Farm Corp. v. United States*, 447 F.3d 258 (4th Cir. 2006) ................. 35

*Kennedy v. Lendmark Fin. Servs.*, RDB-10-02667, 2011 WL 4351534 (D.
Md. Sept. 15, 2011) ......................................................................... 12, 17

*Khepera-Bey v. Santander Consumer USA, Inc.*, CIV. WDQ-11-1269, 2012
WL 1965444 (D. Md. May 30, 2012) ....................................................... 21, 22

*Lamb v. Javitch, Block & Rathbone, LLP*, No. 1:04-CV-520, 2005 WL
4137786 (S.D. Ohio Jan. 24, 2005) ......................................................... 30

*McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939 (9th
Cir. 2011) ..................................................................................... 30

*Morante v. Am. Gen. Fin. Ctr.*, 157 F.3d 1006 (5th Cir. 1998) ........................... 23

*Patzka v. Viterbo College*, 917 F. Supp. 654 (W.D. Wis. 1996) ........................... 23

*Rosenau v. Unifund Corp.*, 539 F.3d 218 (3d Cir. 2008) .................................... 16

*Stewart v. Bierman*, 859 F. Supp.2d 754 (D. Md. 2010) ................................... 27, 36

*Stewart v. Santander Consumer USA Inc.*, CIV. WDQ-11-1269, 2011 WL 4790756 (D. Md. Oct. 6, 2011) ............................................................. 22

*Taylor v. Checkrite, Ltd.*, 627 F. Supp. 415 (S.D. Ohio 1986) ............................... 24

*United States v. Nat'l Fin. Servs.*, 98 F.3d 131 (4th Cir. 1996) ............................ 26

*Veney v. Wyche*, 293 F.3d 726 (4th Cir. 2002) .................................................. 14, 15

*Winemiller v. Worldwide Asset Purchasing*, Civil Action No. RDB-09-2487, 2011 WL 1457749 (D. Md. Apr. 15, 2011) ....................................... 23

*Zevgolis v. Greenberg Law Firm, P.C.*, Civil No. 3:10cv625-DWD, 2011 WL 251024 (E.D. Va. Jan. 26, 2011) ....................................... 32, 33, 34

STATE CASES

*Caswell v. Cross*, 120 Mass. 545 (1876) .......................................................... 23

*Household Credit Servs., Inc. v. Driscol*, 989 S.W.2d 72 (Tex. App. 1998) .......... 23

*McNeal v. Steinberger*, 135 P.2d 490 (Okla. 1943) ........................................... 23

*Southwestern Bell Telephone Co. v. Wilson*, 768 S.W.2d 755 (Tex. App. 1989) ......................................................................................... 23, 24

FEDERAL STATUTES

15 U.S.C. § 1692(e) ................................................................................ *passim*

15 U.S.C. § 1692a .................................................................................. *passim*

15 U.S.C. § 1692e .................................................................................. *passim*

15 U.S.C. §1692f .................................................................................... *passim*

STATE STATUTES

Md. Code Ann., Bus. Reg. § 7-101 ........................................................ 37, 38, 39

Md. Code Ann., Bus. Reg. § 7-301 .............................................................. 37

OTHER AUTHORITIES

H.B. 1324, 423rd Leg., 2007 Reg. Sess. (Md. 2007) .......................................... 38, 39

## JURISDICTIONAL STATEMENT

Appellant correctly recites the statutory basis for jurisdiction. This appeal is from a final judgment of a United States District Court.

## COUNTER-STATEMENT OF THE ISSUES PRESENTED

1.    The Fair Debt Collection Practices Act ("FDCPA") imposes liability on persons who engage in abusive debt collection practices. Only persons who qualify as a "debt collector" within the meaning of the FDCPA are subject to liability under the Act. Is a lessor that hires a debt collection agency to file collection actions on its behalf against defaulting tenants a "debt collector" within the meaning of the FDCPA?

2.    Can a lessor that is not a "debt collector" and, therefore, not primarily liable under the FDCPA, be held vicariously liable under the Act for the conduct of its collection attorney?

3.    The FDCPA prohibits debt collectors from making false or misleading statements in connection with the collection of a debt. Does standard disclosure language included on DC/CV 32 and DC/CV 33 forms, which are later served on judgment debtors by the judgment creditor's collection attorney, constitute a false or misleading statement under the FDCPA?

4.    The Maryland Collection Agency Licensing Act ("MCALA") requires any person who conducts business as a collection agency in Maryland to obtain a

1

collection agency license. Is a lessor that hires a debt collection agency to file collection actions on its behalf against defaulting tenants a "collection agency" within the meaning of the MCALA?

## COUNTER-STATEMENT OF THE CASE

### I.     The Proceedings Below

This appeal involves the District Court's dismissal of a claim brought under the FDCPA by Appellant Kharyn Ramsay ("Appellant") in a purported class action lawsuit against Sawyer Property Management of Maryland, LLC ("Sawyer") and its collection attorney, Jeffrey Tapper ("Tapper"). J.A. 10-56. This is an appeal from a final judgment dismissing the Amended Complaint.

Appellant's first claim is based upon an allegation that the standard disclosure language included on the DC/CV 32 and DC/CV 33 forms sent to Appellant as part of Tapper's efforts to collect a debt on behalf of Sawyer violates various provisions of the FDCPA, which prohibit a debt collector from making false or misleading statements or using unfair or unconscionable means to collect a debt. J.A. 33-34 at ¶¶108-111. Specifically, the Amended Complaint alleges that the debt disclosure was misleading because it confused Appellant into thinking the documents were dunning correspondence from a debt collector and not court orders requiring action. J.A. 19 at ¶¶ 34-35. The Amended Complaint further alleges that the disclosure stamp was false because the court documents were not

communications from a debt collector and, therefore, Tapper was not required to place the disclosure on them. J.A. 34 at ¶111.

The second claim alleges that Sawyer violated the FDCPA by attempting to collect a debt without a Maryland State collection agency license. J.A. 34-36 at ¶¶112-115. The Amended Complaint alleges that Sawyer was required to obtain a collection agency license under MCALA, and that its attempts to collect debts without one constituted unfair debt practices. *Id.*

Both claims arise from a collection lawsuit that Tapper filed on behalf of Sawyer as a result of Appellant's failure to pay rent, which Appellant does not dispute was owed. Appellant seeks to hold Tapper and Sawyer liable under the FDCPA for the disclosure language contained on the DC/CV 32 and DC/CV 33 forms and to hold Sawyer liable for its purported unlicensed collection activity. J.A. 15 at ¶¶18-19. Defendants each moved to dismiss the Complaint under Rule 12(b)(6). Appellant thereafter filed an Amended Complaint, which Defendants also moved to dismiss. On May 31, 2013, the District Court issued a Memorandum Opinion and Order ("Memorandum Opinion") dismissing with prejudice all of the FDCPA claims against Defendants. J.A. 129-150. With no remaining federal issue, the District Court declined to exercise supplemental jurisdiction over the two remaining state law claims, and dismissed those counts without prejudice. J.A. 147.

-3-

## II.    The District Court's Decision

In its Memorandum Opinion, the District Court first held that Sawyer was not a "debt collector" within the meaning of the FDCPA and, therefore, was not subject to primary liability under that statute. J.A. 139. Specifically, the District Court found that Sawyer did not meet the statutory definition of a "debt collector" in 15 U.S.C. §1692a(6) because: (1) Sawyer took collection action against Appellant on its own debt in its own name; and (2) debt collection is not Sawyer's primary business purpose. J.A. 138-139. The District Court also rejected Appellant's claim that Sawyer is vicariously liable under the FDCPA for Tapper's actions inasmuch as Sawyer is not a "debt collector" subject to primary liability under the Act. J.A. 140.

In addition, the District Court held that the disclosure language included on the court forms was not actionable under the FDCPA inasmuch as it was neither false nor misleading as a matter of law. J.A. 141-45. The Court found that even the "least sophisticated consumer" would understand that the documents were court orders instructing Appellant to appear in court based on the conspicuous warnings and notices contained on the documents. J.A. 142. The District Court also held that the disclosure stamp was not a false statement. Specifically, the Court stated that it would not further the purpose of the FDCPA to punish a debt collector for including disclosure language. The FDCPA mandates the placement

-4-

of such disclosures on all communications from creditors to debtors, and the District Court rejected Appellant's argument that the court orders were formal pleadings exempt from the FDCPA's disclosure requirement under §1692e(11). J.A. 144-45. There is no provision of the FDCPA that prohibits placing the disclosure stamp on the court orders.

Lastly, the District Court held that Sawyer's collection efforts did not violate the FDCPA for failure to obtain a license under MCALA. J.A. 146. The Court found that because Sawyer collects its own debts in its own name, it was not a "collection agency" within the meaning of MCALA and, therefore, Sawyer was not required to obtain a state collection agency license. J.A. 146.

## COUNTER-STATEMENT OF FACTS

### I.   Defendants' General Collection Efforts

Sawyer is a rental and property management agent for various Maryland property owners, including SRH Woodmore LLC, the owner of a certain rental property known as "Gwynn Oaks I." J.A. 12 at ¶10. In that capacity, Sawyer enters into lease agreements with Maryland residents. J.A. 107-123. In circumstances where a tenant such as Appellant fails to pay rent, Sawyer employs an attorney and licensed collection agent, Tapper, to file lawsuits to collect the overdue rent owed to Sawyer. J.A. 13 at ¶11; J.A. 15 at ¶19. When a judgment is entered against a defaulting tenant, Tapper utilizes lawful mechanisms authorized

by the Maryland Rules of Civil Procedure (hereinafter, "Maryland Rules") to enforce that judgment. J.A. 15 at ¶¶18, 20. For instance, Tapper seeks to obtain an oral examination of the judgment debtor in aid of enforcement pursuant to Maryland Rule 3-633. *Id.* at ¶20. To request such an examination, Tapper files a "Request for Order Directing Defendant to Appear for Examination in Aid of Enforcement of Judgment (3-633) (Oral)" in a form identified as "DC/CV 32." J.A. 16 at ¶21.[1] Once the order is issued by the court and a judge signs it, Tapper provides the order to the judgment debtor as part of his collection efforts. *Id.* at ¶¶21-22.

If the judgment debtor fails to appear for the oral examination, the Maryland Rules entitle Tapper to request a Show Cause Order for Contempt. *Id.* at ¶23. The Maryland Rules require Tapper to complete a "Request for Show Cause Order for Contempt (3-633) (SHOR)" in a form identified as "DC/CV 33." *Id.* at ¶24. Again, a judge signs the order and Tapper provides it to the judgment debtor. *Id.*; J.A. 17 at ¶25. If the judgment debtor fails to appear at the show cause hearing, Maryland law permits Tapper to request that the court issue an "Attachment for

---

[1]   The Amended Complaint refers to, and incorporates, the court orders that were purportedly sent by Tapper to Appellant. J.A. 53-56. However, Appellant excluded from its pleadings the reverse side of those forms. *See id.* Nevertheless, the District Court appropriately considered the full contents of the orders along with the underlying collection lawsuit filed against Appellant, which were attached to the motions to dismiss. J.A. 142.

Contempt," which directs a peace officer to place the judgment debtor under arrest and deliver the judgment debtor to a judicial officer to set a bond. J.A. 17 at ¶26. The judgment creditor may ask the court to set the bond in an amount equal to the judgment. *Id.* at ¶27.

The Amended Complaint alleges that Tapper adds the following language to the DC/CV 32 and DC/CV 33 forms:

> THIS COMMUNICATION IS FROM A DEBT COLLECTOR. IT IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

*Id.* at ¶28; J.A. 18 at ¶32. The Amended Complaint further alleges that this disclosure confuses judgment debtors into thinking that the documents are dunning correspondence from a debt collector, and not court orders, thereby resulting in their failure to appear at multiple hearings. J.A. 18-19 at ¶¶31-35. Implicit in these allegations is the fact that the judgment debtor was notified of, and failed to appear for, no less than three (3) separate court hearings: (i) the original hearing on the merits; (ii) the court-ordered oral examination; and (iii) the court-ordered show cause hearing for contempt.

## II.    Defendants' Efforts to Collect Appellant's Debt

On or about October 16, 2007, Appellant entered into an agreement to lease property located in Gwynn Oaks I (the "Lease"). J.A. 107-123. The landlord under the Lease is "Sawyer Property Management of Maryland LLC agent for

SRH Woodmore LLC." J.A. 107. Despite her obligations, Appellant failed to pay rent as due, prompting Sawyer to hire Tapper to initiate collection efforts against Appellant. J.A. 103-106. Tapper filed a complaint in the District Court of Maryland for Baltimore County on behalf of the landlord – "Sawyer Property Management of Maryland LLC agent for SRH Woodmore LLC" (J.A. 103) – and obtained a state court judgment of $1,540.84 against Appellant. J.A. 54.

On August 5, 2011, Tapper filed a "Request for Order Directing Defendant to Appear for Examination in Aid of Enforcement of Judgment (3-633) (Oral)" with the District Court of Maryland for Baltimore County. The district court approved Tapper's request and directed Appellant to appear before the court for an oral examination. *Id.* Appellant failed to appear for the examination and, therefore, Tapper filed a "Request for Show Cause Order for Contempt (3-633) (SHOR)," which the district court also approved. J.A. 56. After Appellant failed to appear a second time, the district court issued an "Attachment of Contempt," which directed the Sheriff's Office of Baltimore County to arrest her. J.A. 19 at ¶36. According to the Amended Complaint, the Sheriff's Office arrested Appellant on April 23, 2012, and she was allegedly held for two hours before being released on her own recognizance. *Id.* at ¶37.

## SUMMARY OF ARGUMENT

The District Court correctly dismissed the FDCPA claims for multiple reasons, any one of which would independently warrant affirmance of the decision. First, the District Court properly concluded that Sawyer is not a "debt collector" within the meaning of the FDCPA. The definition of "debt collector" relevant to this appeal excludes both (1) creditors who collect their own debts and whose primary business purpose is not debt collection, and (2) persons who collect debts on behalf of another if those debts were not in default at the time they were obtained. As the record reflects, Sawyer was the lessor under the Lease with Appellant and, therefore, was an original creditor who collected its own debt in its own name when it hired Tapper. Moreover, because there is no allegation that Sawyer's primary business purpose is debt collection, Sawyer is not a "debt collector" under the first exception above, and the District Court's judgment should be affirmed on that basis.

Even assuming that Sawyer was not the original creditor, but rather, collected the instant debt on behalf of another, the undisputed record demonstrates that Sawyer obtained the debt at the inception of the Lease. As such, Sawyer obtained the debt before default and, therefore, is not a "debt collector" under the second exception above. The District Court's judgment should, therefore, be affirmed on this basis as well.

This Court should also affirm the District Court's holding that Sawyer is not vicariously liable under the FDCPA for Tapper's actions. Even assuming the existence of an agency relationship, this Circuit holds that a person who is not primarily subject to the FDCPA is not vicariously liable under the Act.

The District Court correctly concluded that the disclosure language included on the DC/CV 32 and DC/CV 33 forms did not violate §1692e of the FDCPA. To be actionable under §1692e, a statement must be false or misleading to the "least sophisticated consumer." The debt disclosures were not misleading as a matter of law. Given the abundant and conspicuous notices and warnings contained on the forms instructing Appellant to appear in court or risk arrest, the disclosure language could not confuse even the "least sophisticated consumer" into thinking the documents were correspondence from a debt collector, as opposed to court orders. It is implausible that the disclosure could have overshadowed the numerous other indicia that the forms were court orders requiring action.

Similarly, the disclosure language was not false. The FDCPA requires a debt collector to include such a disclosure on all communications to a debtor, except "formal pleadings." The court forms are not formal pleadings and were provided to Appellant by Tapper as part of his effort to collect a debt. As such, failure to include the disclosure stamp on them would have subjected Tapper to liability under the FDCPA. To punish Tapper for complying with federal law

would turn the FDCPA on its head. Additionally, Appellant cannot resolve the inherent inconsistency in her claim. In her allegation that Tapper violated the FDCPA, she claims that the alleged violations arise from a court order, and not a communication from a debt collector. If the forms were court orders and not communications from a debt collector, Tapper could not have violated §1692e or §1692f of the FDCPA, as alleged by the Appellant.

In addition, the debt disclosures did not violate §1692f, which prohibits using unfair or unconscionable means to collect a debt. An independent §1692f claim cannot stand where, as here, the conduct complained of is the same that gives rise to the §1692e claims. Additionally, there was nothing unfair or unconscionable about Tapper being forthright with Appellant and complying with the FDCPA's disclosure requirements.

Lastly, the District Court correctly held that Sawyer is not liable under §1692f for collecting debts without a Maryland collection agency license. Under MCALA, any person acting as a "collection agency" is required to obtain a collection agency license. A "collection agency" includes persons who collect debts on behalf of another and creditors who acquire debts after they are in default. Here, Sawyer collected its own debt which it obtained at the inception of the Lease and, thus, prior to default. Sawyer is, therefore, exempt from the licensing

requirements under MCALA and its collection efforts are not actionable under §1692f.

## ARGUMENT

### I.  Sawyer Is Not a "Debt Collector" Within the Meaning of the FDCPA

In order to be liable under the FDCPA, Sawyer must qualify as a "debt collector" under the Act. *Fontell v. Hassett*, 870 F. Supp. 2d 395, 402 (D. Md. 2012). The FDCPA defines a "debt collector" as (1) "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," (2) "or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. §1692a(6).

The FDCPA does not, therefore, apply to "creditors collecting debts in their own names whose primary business is not debt collection." *Kennedy v. Lendmark Fin. Servs.*, RDB-10-02667, 2011 WL 4351534, *3 (D. Md. Sept. 15, 2011). In addition, the Act's definition of debt collectors expressly excludes "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity…(iii) concerns a debt *which was not in default at the time it was obtained* by such person." 15 U.S.C. § 1692a(6)(F)(iii) (emphasis added).

As set forth in Section A below, because (1) Sawyer took collection action to recover its own debt in its own name and (2) Sawyer's primary business is not debt collection, Sawyer is not a "debt collector" under the FDCPA. However, as explained in Section B, even assuming Sawyer collected the debt of another, Sawyer is nevertheless exempt from liability under § 1692a(6)(F)(iii) because it obtained and serviced Appellant's debt prior to default.

A.    Sawyer is a Creditor Whose Primary Business is Not Debt Collection

*1. Sawyer is a Creditor that Collects its Own Debts*

The Amended Complaint baldly alleges that Sawyer "regularly collect[s] or attempt[]s to collect, directly or indirectly, debts asserted to be owed or due another." J.A. 14 at ¶13. However, both the factual allegations in the Amended Complaint and the documents incorporated therein demonstrate that Sawyer collects its own debts in its own name.

The undisputed facts are as follows. Appellant entered into the Lease with "Sawyer Property Management of Maryland, LLC, Agent for SRH Woodmoor, LLC." J.A. 107-123. The Lease states, in pertinent part:

> THIS LEASE, made on October 16th, 2007, whereby ***SAWYER PROPERTY MANAGEMENT OF MARYLAND LLC agent for SRH Woodmore LLC, hereinafter referred to as Landlord,*** does hereby lease unto Marlon T Harris & Kharyn Ramsay hereinafter referred to as Tenant, the premises known as 6715 F TOWNBROOK DRIVE, Gwynn Oak, MD 21207....

J.A. 107 (emphasis added). The Lease was signed by a representative of Sawyer, which is identified as the "Landlord/Agent." *Id.* Sawyer had contractual rights and obligations under the Lease as the landlord, including the right to sue and be sued. Appellant's contention that Sawyer "is not the landlord" under the Lease (Appellant's Br. at 30) is belied by the unambiguous language of the Lease, a document that Appellant relies upon in her own Brief (at 33).

When Appellant failed to pay rent as owed, Sawyer hired attorney Tapper, a licensed collection agent, to file a collection action on its behalf against Appellant to recover the overdue rent. J.A. 13 at ¶12; J.A. 103-06. Tapper filed suit on behalf of the landlord under the Lease: "Sawyer Property Management of Maryland, LLC, Agent for SRH Woodmoor, LLC." J.A. 103. After default judgment was entered against Appellant, the court issued orders (DC/CV 32 and 33) to aid in the enforcement of judgment. J.A. 53-56. Those court orders correctly identify the judgment creditor as "Sawyer Property Management of Maryland, LLC." J.A. 54, 56.

The documents attached to and referenced in the Amended Complaint make clear that Sawyer was collecting debts in its own name as landlord under the Lease, and these documents should be given greater weight than the conclusory allegations in the Amended Complaint. *See Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (holding that a court need not accept an appellant's allegation if it

contradicts documents properly considered with the complaint); *see also Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 (7th Cir. 2004) (when a "document contradicts a complaint to which it is attached, the document's facts or allegations trump those in the complaint").

In fact, the Amended Complaint is devoid of any specific factual allegation that Sawyer was collecting a debt on behalf of another. *See* J.A. 12 at ¶10. There are no factual allegations that even create an inference that Sawyer obtained the debt from another either by purchase, assignment or otherwise. Instead, as the documents make clear, Sawyer filed a collection action in its own name to collect its own debt – i.e., the rent owed by Appellant under the Lease. J.A. 103. Sawyer never obtained the debt from another because it always owned it.

In concluding that Sawyer collected debts in its own name, the District Court appropriately reviewed the underlying collection lawsuit and the DC/CV 32 and 33 forms referenced in the Amended Complaint and included in the record. Appellant's suggestion (Appellant's Br. at 32-33) that the District Court neglected to consider the collection lawsuit is contradicted by the Memorandum Opinion, which Appellant acknowledges as holding that "*the collection lawsuit* itself reflects that Tapper filed the action in Sawyer Property's name." Appellant's Br. at 32 (quoting J.A. 138) (emphasis added). The District Court, therefore, did not commit error when it properly considered the clear and plain language of the

-15-

documents in the record before it, including the underlying collection lawsuit, and concluded that Sawyer collects its own debts in its own name.

Appellant's Brief nevertheless argues that Sawyer is a "debt collector" under the FDCPA because it collected rent. Appellant's Br. at 31. In support of this argument, Appellant relies exclusively on a Federal Trade Commission ("FTC") staff commentary, which identifies "[a] firm that regularly collects overdue rent on behalf of real estate owners...because it 'regularly collects debts owned or due another'" as a possible example of a debt collector. *Id.* (citing 53 Fed. Reg. 50097-02, at 50102 (Dec. 13, 1988)). Appellant's reliance on that commentary is unavailing for at least two reasons. First, FTC commentaries are not controlling. *See Rosenau v. Unifund Corp.*, 539 F.3d 218, 225 (3d Cir. 2008), cited in Appellant's Br. at 18-19 (stating that "'FTC's advisory opinions are not entitled to deference in FDCPA cases except perhaps to the extent that their logic is persuasive,'" and holding that the "FTC Commentary is not persuasive in this case because it is factually inapposite" (citation omitted)). Second, the FTC commentary is inapposite because, unlike the firm described therein, Sawyer collected rent on its own behalf as the landlord and not on behalf of another.

## 2. Sawyer's Primary Business Is Not Debt Collection

The Amended Complaint likewise fails to allege that Sawyer's primary business purpose is debt collection. Although Appellant alleges that Sawyer is "in the business of collecting debts" (J.A. 12 at ¶10), the Amended Complaint does not even allege in conclusory fashion that Sawyer's primary business purpose is debt collection, as required by statute. Indeed, as the District Court found, such an allegation would be inconsistent with the other allegations in the Amended Complaint, namely that Sawyer is a "rental agent for various landlords throughout Maryland" (J.A. 139 (quoting J.A. 12 at ¶10)), and the documents which demonstrate that Sawyer engages in leasing activities. *See, e.g.*, J.A. 107-123. The Amended Complaint, therefore, alleges no facts that debt collection is Sawyer's primary business.

Thus, because Sawyer is a creditor that collects debts in its own name and whose primary business is not debt collection, Sawyer is not a "debt collector" under the FDCPA and the District Court's order should be affirmed on that issue. *See Kennedy*, 2011 WL 4351534 at *3.

### B.  Alternatively, Sawyer is Exempt from FDCPA Liability Because Sawyer Obtained the Right to Collect the Debt Prior to Default

Having found that Sawyer collected debts in its own name as creditor, the District Court did not reach – because it did not need to – the question of whether Sawyer is exempt from FDCPA liability under §1692a(6)(F)(iii). However, to the

-17-

extent this Court finds that Sawyer collected the debt on behalf of another, because Sawyer obtained that debt before it was in default, Sawyer falls squarely within the §1692a(6)(F)(iii) exception, and is not a "debt collector" for that alternative reason.

The FDCPA's definition of "debt collector" contains an express exception for persons who collect a debt on behalf of another where that debt "was not in default at the time it was obtained" by the collector. 15 U.S.C. §1692a(6)(F)(iii). "Thus, the FDCPA does not apply to collection efforts by those who obtained the right to payment on the debt before the debt was in default." *Franceschi v. Mautner-Glick Corp.*, 22 F. Supp. 2d 250, 253 (S.D.N.Y. 1998). As such, even assuming the conclusory allegation that Sawyer "engages in the business of collecting debts alleged to be due another" were true (which it is not), Sawyer is not a "debt collector" because it obtains debts before they are in default.

In a case with facts similar to the instant matter, the United States Court of Appeals for the Seventh Circuit held that AMC, LLC, an apartment building owner's management agent, was not a debt collector because management firms, such as AMC, LLC and Sawyer,[2] obtain a debt when a lease begins, necessarily

---

[2] As alleged in the Amended Complaint, Sawyer is "a rental agent for various landlords throughout Maryland." J.A. 12 at ¶10. In that capacity, Sawyer enters into leases with Maryland residents and collects rent during the tenancy. J.A. 107-123. The Amended Complaint is devoid of any allegation that Sawyer, as a prototypical property management company and lessor, only collects debts once they are in default.

-18-

prior to default, or when the agency relationship begins if that occurs after the lease is signed. *See Carter v. AMC, LLC*, 645 F.3d 840, 844 (7th Cir. 2011). The Seventh Circuit determined that "although one usually 'obtains' a debt by purchasing it," that is not the only way to obtain a debt. *Id.* A servicing agent, including property management companies such as AMC, LLC and Sawyer, obtains a debt when it "acquires the authority to collect the money on behalf of another." *Id.* (rejecting argument that "obtained" requires an ownership of the debt); *see also Franceschi*, 22 F. Supp. 2d at 254. As Sawyer was specifically identified on the Lease, and was therefore the landlord's agent prior to the time that Appellant defaulted on her rent payments, Sawyer obtained an interest in Appellant's debt prior to the time that it fell into default. Accordingly, under Section 1692a(6)(F)(iii), Sawyer is not a debt collector and does not owe Appellant any duties under the FDCPA.

The United States District Court for the District of Maryland evaluated a case with similar facts, *Fontell v. Hassett*, where it held that a condominium owner's management agent was not a debt collector under the FDCPA because it was involved in a collection action from the start, prior to the plaintiff's eventual default on the obligation. 870 F. Supp. 2d 395 (2012). The court noted that "the management agent and its employees are to be considered 'debt collectors' only if they began their attempts to collect the debt after Plaintiff had gone into default."

-19-

*Id.* at 402. Similarly, in *Franceschi v. Mautner-Glick Corp.*, the United States District Court for the Southern District of New York held that a residential landlord's property management company was not a debt collector as defined in the FDCPA. 22 F. Supp. 2d at 255-56. Mautner-Glick Corp. (MGC), a property management agent, sent a collection letter to a tenant for rent due.[3] *Id.* The tenant claimed that the property manager was acting as a debt collector on behalf of the landlord, in violation of the FDCPA. *Id.* at 252. The court disagreed with the tenant and held that MGC fell within the exception set forth in §1692a(6)(F)(iii) because it was engaged to collect debts before they fell into default. *Id.* at 255. As the landlord's management agent, MGC had "not only the right but also the obligation to collect [the tenant's] rent before as well as after such debt was 'in default.'" *Id.* As the *Franceschi* court noted, "the legislative history of the FDCPA confirms that Congress did not intend the Act to cover companies in the business of regularly servicing outstanding debts, such as rents, for others." *Id.* at 254.

Sawyer is in the same position as AMC, LLC, the management agent in *Fontell*, and MGC in that it is engaged to collect rents as they become due, prior to

---

[3]    Appellant does not allege that Sawyer took any actions that constitute debt collection activities. Instead, in the Amended Complaint, Appellant alleges only that Sawyer hired Tapper to file a lawsuit against Appellant for unpaid rent; Sawyer is not alleged to have sent collection letters or otherwise to have engaged in debt collection activities.

any default. Sawyer, which was listed on the initial Lease with Appellant, was not engaged to collect rents only once those debts fall into default, and the Amended Complaint is devoid of any factual allegation suggesting otherwise. Instead, Sawyer began collecting rent at the inception of the Lease under its undisputed terms, and continued to do so until Appellant stopped paying and defaulted under the Lease. J.A. 107. As such, Sawyer falls into the express exception found in 1692a(6)(F)(iii), and is not a "debt collector" within the meaning of the FDCPA. Therefore, even if this Court finds that Sawyer collects debts on behalf of another, and that Sawyer's primary business is debt collection, this Court should affirm the District Court's order on the ground that Sawyer is not a "debt collector" under 1692a(6)(F)(iii).

Without legal support, Appellant argues that Sawyer bears the burden of proving that it serviced Appellant's debt at a time when it was not in default. Appellant's Br. at 34. To the contrary, for "an FDCPA claim against a 'debt collector' to survive a Rule 12(b)(6) motion to dismiss, the [Appellant] must allege facts that make it plausible to believe that the defendant is, in fact, a debt collector as defined by the FDCPA." *Givens v. Citimortgage, Inc.*, CIV. PJM 10-1249, 2011 WL 806463, at *2 (D. Md. Feb. 28, 2011); *see also Khepera-Bey v. Santander Consumer USA, Inc.*, CIV. WDQ-11-1269, 2012 WL 1965444, at *9 (D. Md. May 30, 2012) ("[t]o state a claim under the FDCPA, [an Appellant] must

show that the defendants are debt collectors." (citation omitted)). Thus, in order to survive a motion to dismiss, the Amended Complaint "must allege that the defendant is a debt collector, *and show that the [Appellant] was in default when the defendant began servicing his loans*." *Stewart v. Santander Consumer USA Inc.*, CIV. WDQ-11-1269, 2011 WL 4790756, at \*4 (D. Md. Oct. 6, 2011) (emphasis added). It is Appellant, therefore, who bears the burden of showing that the debt was obtained after default, and Appellant has not met her burden.

## II.    Sawyer Cannot Be Found Vicariously Liable Under the FDCPA for Tapper's Conduct

The Amended Complaint alleges, in conclusory fashion, that Sawyer should be found vicariously liable under the FDCPA for the actions of Tapper as its purported agent. J.A. 13 at ¶12. That allegation is without merit, however, as courts have held that an entity who is not subject to primary liability under the FDCPA cannot be held vicariously liable under the Act. *See Fontell*, 870 F. Supp. 2d at 412. In *Fontell*, the appellant alleged that a homeowners' association, which was not itself a "debt collector" under the FDCPA, was vicariously liable for the actions of its collection attorneys under an agency and vicarious liability theory. *Id.* at 401. The Court rejected the appellant's argument and held that, because the defendant was not a debt collector and, therefore, not primarily liable under the FDCPA, it could not be held vicariously liable for the actions of its collection attorneys. *Id.* at 412. The Court reasoned as follows:

-22-

> A debt collector should not be able to hire an attorney to engage in illegal debt collection practices on its behalf as a means of avoiding liability under the FDCPA. *On the other hand, if the client is not a debt collector subject to liability under the FDCPA itself, then its decision to hire an attorney to engage in debt collection practices on its behalf would not be predicated on evading FDCPA liability, and imputing liability under those circumstances would not further the interests of the Act.*

*Id.* (emphasis added).

Appellant dismisses the holding in *Fontell*, contending that its reasoning is inconsistent "with the underlying purpose of the FDCPA" (Appellant's Br. at 40), and instead cites cases from other jurisdictions to support her vicarious liability theory. Appellant's Br. at 39-41. However, each of the cases cited by Appellant are irrelevant because they either: (1) do not address vicarious liability under the FDCPA; or (2) address situations where the defendant is a "debt collector" and, therefore, primarily liable under the Act. *See* Appellant's Br. at 39-41 and cases cited therein.[4]

---

[4]    *See Winemiller v. Worldwide Asset Purchasing*, Civil Action No. RDB-09-2487, 2011 WL 1457749, *3-*5 (D. Md. Apr. 15, 2011) (addressing vicarious liability under Maryland debt collection statute, not FDCPA, in action against debt collector); *Patzka v. Viterbo College*, 917 F. Supp. 654, 661-62 (W.D. Wis. 1996) (discussing vicarious liability under Wisconsin statute, not FDCPA, in action against debt collector); *Caswell v. Cross*, 120 Mass. 545 (1876) (no FDCPA claim pled); *McNeal v. Steinberger*, 135 P.2d 490 (Okla. 1943) (same); *Household Credit Servs., Inc. v. Driscol*, 989 S.W.2d 72 (Tex. App. 1998) (same); *Morante v. Am. Gen. Fin. Ctr.*, 157 F.3d 1006, 1009 (5th Cir. 1998) (addressing vicarious liability theory under contract law, not FDCPA); *Southwestern Bell Telephone Co. v. Wilson*, 768

As discussed above, Sawyer is not a debt collector based upon the facts alleged in the Amended Complaint and the documents incorporated therein. Sawyer hired Tapper, a licensed collection agent, to file a collection lawsuit on Sawyer's behalf. There is no concern that Sawyer employed Tapper to avoid compliance with the FDCPA, and imputing liability to Sawyer would not further the interests of the Act. Just as in *Fontell*, Sawyer is not a debt collector subject to primary liability under the FDCPA and, therefore, this Court should affirm the District Court's Order holding that Sawyer is not vicariously liable as a matter of law.

## III.    The Debt Disclosures Included on the DC/CV 32 and DC/CV 33 Forms Do Not Violate the FDCPA

The Amended Complaint alleges that Defendants violated the FDCPA by including the following debt collection disclosure language on certain district court documents:

---

S.W.2d 755, (Tex. App. 1989) (no FDCPA claim pled). Although Appellant argues that the court in *Taylor v. Checkrite, Ltd.*, 627 F. Supp. 415 (S.D. Ohio 1986) held the defendant liable for the FDCPA violations of its agent, that contention is inaccurate. In *Taylor*, the court determined that, because of the special relationship between a franchisor and its franchisee, the franchisor could be liable for the actions of its franchisee. *Id.* at 417-18. However, the court was not presented with the issue of whether the franchisee or the franchisor were debt collectors subject to the FDCPA. *See id.* at 416, n.1. Accordingly, *Taylor* does not stand for the proposition that an entity not primarily liable under the FDCPA can be secondarily liable under the Act.

THIS COMMUNICATION IS FROM A DEBT
COLLECTOR. IT IS AN ATTEMPT TO COLLECT A
DEBT AND ANY INFORMATION OBTAINED WILL
BE USED FOR THAT PURPOSE.

J.A. 16 at ¶¶21 & 24, J.A. 17 at ¶28, J.A. 18 at ¶32. The Amended Complaint

contends that "these unauthorized changes to the [forms] are misleading and

confuse judgment debtors into thinking that the document is a communication from

a debt collector, as opposed to a court's order" and are, therefore, false and

misleading under the FDCPA. J.A. 18 at ¶31; see 15 U.S.C. §1692e ("A debt

collector may not use any false, deceptive, or misleading representation or means

in connection with the collection of any debt."). The Amended Complaint also

alleges that the placement of debt disclosures was unfair and unconscionable under

§1692f.[5] In short, Appellant seeks to impugn Tapper for his prudence in including

a disclosure in a situation where he erred on the side of caution in including such

language.

A.    The Debt Disclosures Were Neither False Nor Misleading

The disclosure language is neither false nor misleading. First, the disclosure

stamp on the documents could not plausibly have confused or misled even the least

---

[5]    Based on essentially the same arguments, the Amended Complaint also
alleges that the disclosure stamped on the court documents also violates
§1692e(10) and (15), which prohibit the use of any false representation or
deceptive means to collect a debt and the false representation or implication
that documents are not legal process forms or do not require action by the
consumer, respectively. J.A. 33-34 at ¶¶108-09.

sophisticated consumer into thinking the documents were dunning correspondence in light of the conspicuous warnings and notices highlighting that the documents were court orders requiring action. Second, the disclosures were not false, but rather, were required by the FDCPA, and Tapper appropriately placed them on the forms. It is undisputed that Tapper included the additional disclosure language on the court forms prior to the time that they were sent to the court and approved by a judge. Accordingly, if the court forms were court orders, then the additional disclosure language was incorporated into the orders when signed by the judge. Second, if the court forms were court orders and not communications from a debt collector, then it is clear that Tapper could not have possibly violated §1692e or §1692f of the FDCPA, as alleged by the Appellant, which prohibit a debt collector from using "false or misleading representations" or "unfair or unconscionable means" to collect a debt, respectively.

### 1. The Disclosure Stamp Was Not Misleading

To state a claim under §1692e of the FDCPA, an Appellant must show that the challenged representations would mislead the "least sophisticated consumer." *United States v. Nat'l Fin. Servs.*, 98 F.3d 131, 136 (4th Cir. 1996). This standard protects "the gullible as well as the shrewd;" however, it also "preserv[es] a quotient of reasonableness and presum[es] a basic level of understanding and willingness to read with care." *Id.* (citing *Clomon v. Jackson*, 988 F.2d 1314, 1319

-26-

(2d Cir. 1993)). The least sophisticated consumer standard does not protect "bizarre or idiosyncratic interpretations." *Id.* Appellant acknowledges that whether the least sophisticated consumer would be misled by the disclosure stamp is a question of law. Appellant's Br. at p. 19 (citing *Wilson v. Quadramed Corp.*, 225 F.3d 350, 353, n.2 (3d Cir. 2000)); *see also Stewart v. Bierman*, 859 F. Supp. 2d 754, 765, 770 (D. Md. 2010).

Appellant claims that Tapper's disclosure stamp "falsely impl[ied] that the communication was not a court order" (Appellant's Br. at 21) and that its placement on the documents "had the potential of lulling consumers into inaction after mistakenly concluding that the communication was from a debt collector, not the court." *Id.* at 22. However, based on its review of the operative documents and court orders, the District Court held that "Plaintiff's claim is implausible, however, because even the least sophisticated consumer, reading the documents with care, would understand that they were court orders." J.A. 142.

A basic review of the court forms reveals that even the "least sophisticated consumer" would understand the gravity of the orders issued by the State district court and the need to appear if she bothered to read the several documents. The DC/CV 32 is a form issued by the District Court of Maryland for Baltimore County and imprinted with the court's stamp and seal in the upper left hand corner. J.A. 54. The caption and case number signal that Appellant is a defendant in a

-27-

court case. *Id.* The DC/CV 32 court order bears the following bold headings in all capital letters:

> REQUEST FOR ORDER DIRECTING DEFENDANT TO APPEAR FOR EXAMINATION IN AID OF ENFORCEMENT OF JUDGMENT (3-366) (ORAL)

> and

> ORDER OF COURT

*Id.* (emphasis in original). The Order also plainly states in bold and all capital letters that "YOU ARE ORDERED TO APPEAR IN PERSON," and provides the date and time that the judgment debtor is ordered to appear in person before the court. *Id.* (emphasis in original). The Order is hand-signed by a judge of the district court and provides the following plain warning:

> NOTICE TO PERSON SERVED: If you refuse or without sufficient excuse neglect to obey this Order, you may be punished for contempt.

*Id.* (emphasis in original).

DC/CV 33 represents yet another plain court order and provides yet another notice to the debtor of the obligation to appear in person before the court. Like DC/CV 32, it contains the following heading in bold and all capital letters: "SHOW CAUSE ORDER FOR CONTEMPT." J.A. 56 (emphasis in original). Again, this order bears the court's official seal and is hand-signed by a judge of the district court. *Id.* Another NOTICE follows the judge's signature and provides the following warning:

NOTICE

If you fail to appear, an order may be issued resulting in
your arrest and you may be found in contempt of court.
Please read the important information on the reverse of
this form.

*Id.* (emphasis in original). The reverse side of Form DC/CV 33 advises the debtor

to consult a lawyer, or the Public Defender in the event the debtor cannot afford a

lawyer, and reiterates the previous warnings:

IF YOU DO NOT APPEAR FOR A SCHEDULED
PREHEARING      CONFERENCE      OR      COURT
HEARING BEFORE THE JUDGE, YOU WILL BE
SUBJECT TO ARREST

J.A. 6 (emphasis in original).

In order for the "least sophisticated consumer" to be confused or misled by

the disclosure language contained on the DC/CV 32 and DC/CV 33 forms, she

would have to completely ignore the plain language of the forms, the judge's

signature, the fact that she is ordered to appear not once, but several times, and the

unambiguous warnings that if she fails to appear, she is subject to arrest. This is

not only improbable, but completely implausible, and the Court should not

consider Appellant's "bizarre and idiosyncratic" reading of the court orders.

Indeed, it is infinitely more plausible that the judgment debtors failed to appear for

three (3) separate hearings in order to avoid enforcement of judgments against

them.

The cases Appellant relies upon to support the allegation that the disclosure stamp is misleading are inapposite. Appellant's Br. at 22-23. To be sure, this is not a case where the collection agency failed to provide some critical information regarding discovery requests (*McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 952 (9th Cir. 2011), cited in Appellant's Br. at 22), or where a collection attorney inadequately described some legal process (*Blum v. Fisher & Fisher*, 961 F. Supp. 1218, 1223-24 (N.D. Ill. 1997), cited in Appellant's Br. at 22), or where a creditor failed to request a hearing as required by rule, thereby resulting in the entry of default judgment against Appellant (*Lamb v. Javitch, Block & Rathbone, LLP*, No. 1:04-CV-520, 2005 WL 4137786, *3-4 (S.D. Ohio Jan. 24, 2005), cited in Appellant's Br. at 23). Instead, Tapper exercised caution in complying with the law by placing a disclosure on a court document notifying the judgment debtor that information given by the debtor could be used in the collection of a debt.

### 2. The Disclosure Stamp Did Not Constitute a False Statement

Contrary to the bald allegations in the Amended Complaint, the disclosures made by Tapper were not false, but were true, accurate and required by the FDCPA. The FDCPA requires that a person attempting to collect a debt disclose, in the initial communication, that the person "is attempting to collect a debt and that any information obtained will be used for that purpose." 15 U.S.C. §

1692e(11).    The FDCPA further mandates that, *in every subsequent communication*, it must be disclosed that the "communication is from a debt collector." *Id.* (emphasis added).    Failure to make these disclosures results in liability under the FDCPA. *Id.*

Tapper provided the documents at issue to Appellant in an effort to collect the debt owed by Appellant.    As such, Tapper was communicating with a debtor in an effort to collect the debt when he provided the documents, and anything that the Appellant communicated to Tapper may have been used against her in order to collect the debt.    Therefore, Tapper did not make a false statement, but instead complied with the FDCPA disclosure requirements by including the requisite language.    15 U.S.C. § 1692e(11).

The fundamental intent of the FDCPA is to penalize debt collectors who conduct themselves in coercive or surreptitious ways in order to harass or trick borrowers into admissions by hiding their true nature and purpose. *See* 15 U.S.C. §1692(e).    To impose primary or vicarious liability on a party for making a full and fair disclosure of their identity and purpose would turn the FDCPA on its head.    It would leave debt collectors with a proverbial Hobson's Choice of attempting to divine when they should make required disclosures and when they should not make them.    Contrary to the implications of the Amended Complaint, imposing such a precedent on a debt collector would most assuredly cause significant

-31-

confusion. Indeed, penalizing full disclosure is patently not the intent of the statute and would represent a dangerous precedent.

Nevertheless, Appellant contends that the disclosure stamp "is false, because the communication is not from the debt collector, but rather is an order issued by the state court..." Appellant's Br. at 20. In support, Appellant relies exclusively on *Zevgolis v. Greenberg Law Firm, P.C.*, Civil No. 3:10cv625-DWD, 2011 WL 251024 (E.D. Va. Jan. 26, 2011). Appellant's Br. at 25-26. In *Zevgolis*, the plaintiff claimed that a defendant debt collector violated the FDCPA by failing to include the §1692e(11) disclosure on a "Summons to Answer Interrogatories" that Zevgolis received. 2011 WL 251024 at *1. The Court held that the "Summons to Answer Interrogatories" was a court-issued document, not a communication from a debt collector and, therefore, the §1692e(11) disclosure was not required. *See id.* at *3. In so holding, the Court reasoned that the Summons was issued by the clerk and served by the sheriff's office. *See id.* The Court explained that it is "axiomatic that where the debt collector is not the one conveying the message, and has no control over the form of the message, such communication cannot constitute an 'initial written communication' for FDCPA purposes." *Id.*

The *Zevgolis* Court's determination that a disclosure is not necessary does not mean that the inclusion of such disclosure language is impermissible or that it is deceptive. *Zevgolis* is not "directly on point," but rather, is inapposite. In the

-32-

instant matter, Tapper – not the sheriff or court clerk – served the court documents on Appellant, pursuant to Maryland Rule 3-633(b), as part of his efforts to collect a debt. J.A. 18 at ¶¶29, 33. Unlike the summons in *Zevgolis*, the court documents in the instant matter constituted communications from Tapper in an ongoing effort to collect a debt, thereby requiring disclosure under §1692e(11). Significantly, Appellant cites no authority to support her assertion that the disclosure language cannot be present on a form, or that it is misleading. *Zevgolis* simply stands for the proposition that, under the facts of that case, the disclosure language was not required.

Apparently recognizing the weakness of her position, Appellant alternatively argues that the disclosure was false because §1692e(11) does not require a debt collector to make the disclosure in certain pleadings made in connection with a legal action. Appellant's Br. at 27 (citing 15 U.S.C. §1692e(11)) ("[T]his paragraph shall not apply to a formal pleading made in connection with a legal action."). Significantly, Appellant fails to cite any authority or otherwise demonstrate that the DC/CV 32 and 33 court orders constitute formal pleadings under the FDCPA. At least one court in this Circuit has held that the "formal pleadings" referenced in § 1692e(11) likely include only those pleadings identified in Rule 7(a) of the Federal Rules of Civil Procedure. *See Hauk v. LVNV Funding, LLC*, 749 F. Supp.2d. 358, 367 (D. Md. 2010) (holding that interrogatories served

on debtor required the debt collection disclosure).[6] The court forms at issue in the instant appeal do not fall into the pleading categories identified in Rule 7(a),[7] and that represents a "persuasive indication that Congress did not intend for all documents filed in connection with a lawsuit to fall within the formal pleading exception." *Id.*

Even if the DC/CV 32 and DC/CV 33 forms constitute "formal pleadings" that are not required to contain disclosure language under the FDCPA, Appellant's contention that there is affirmative liability imposed on those who candidly disclose that they are attempting to collect a debt is without support. Such a leap to liability is not supported by the statute. Indeed, Appellant can point to no provision of the FDCPA that prohibits Tapper from including the disclosure stamp on the DC/CV 32 and DC/CV 33 forms, and Appellant identifies no case in which

---

[6]     Appellant's citation to an unpublished case from another jurisdiction is similar to *Zevgolis* in that the court held that a debt collector was not required to reaffirm its status as a debt collector in "subsequent, post-pleading litigation documents;" however, the court did not determine that it would be improper or impermissible to include such a disclosure. *See* Appellant's Br. 27 (citing *Motherway v. Gordon*, No. 09-cv-05605-RBL, 2010 WL 2803052 (W.D. Wash. July 15, 2010)). Indeed, *Motherway* demonstrates Tapper's prudence in including the disclosure, given that attorneys have been sued for failure to include disclosure language on litigation documents.

[7]     The Pleadings recognized in Rule 7(a) are (1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer.

-34-

a debt collector's decision to make a §1692e(11) disclosure was held against him as an FDCPA violation.

Lastly, Appellant argues that the disclosure stamp was false because it included certain language ("any information obtained will be used" to assist in the collection of a debt) that is only required in the initial communication. Appellant's Br. at 10, 28-29. As a threshold matter, Appellant did not present this argument to the District Court and, thus, it has been waived and should not be considered by this Court. *See Holly Hill Farm Corp. v. United States*, 447 F.3d 258, 267 (4th Cir. 2006) (quoting *Williams v. Prof'l Transp. Inc.*, 294 F.3d 607, 614 (4th Cir. 2002)) ("'[i]ssues raised for the first time on appeal are generally not considered absent exceptional circumstances'"). In any event, as discussed *infra*, Appellant cites no authority supporting her contention that, simply because certain disclosure language was allegedly not required on the forms, its inclusion was somehow prohibited.

Thus, because the disclosure stamps were neither false nor misleading as a matter of law, this Court should affirm the District Court's order dismissing Appellant's §1692e claims relating to the disclosures.

### B.    The Placement of the Disclosure Stamp on the DC/CV 32 and DC/CV 33 Forms Does Not Violate §1692f of the FDCPA

The Amended Complaint further claims that Tapper's placement of the disclosure stamp on the court documents violates §1692f, which prohibits a debt

collector from using "unfair or unconscionable means to collect or attempt to collect any debt."[8] J.A. 33 at ¶109. Appellant's claim cannot stand as a matter of law.

Courts in this Circuit and others have held that where, as here, a §1692f claim does not allege "unfair or unconscionable" conduct separate and distinct from the conduct giving rise to the §1692e claim, the §1692f claim must be dismissed as a matter of law. *Stewart*, 859 F. Supp. 2d at 765; *see also Foti v. NCO Fin. Sys.*, 424 F. Supp. 2d 643, 667 (S.D.N.Y. 2006) (dismissing complaint where Appellants did not "identify any misconduct beyond that which Appellants assert other provisions of the FDCPA").

Furthermore, there is nothing "unfair" or "unconscionable" about the debt disclosure. As discussed *infra*, the documents were provided to Appellant as part of Tapper's communications to collect a debt, and Tapper added the debt disclosure in an effort to be forthright and comply with federal law. Tapper did not

---

[8]    Appellant argues throughout the Brief that the imprisonment of Appellant and members of the putative class is a violation of §1692f because it violates "the strong public policy against imprisonment for debt." Appellant's Br. 10, 24. In so arguing, Appellant attempts to rewrite the Maryland Rules, which expressly permit a judgment creditor to request an oral examination of the debtor and, if the debtor fails to appear, allow the court to hold the debtor in contempt. *See* Md. Rule 3-633(b). Any imprisonment of the judgment debtor is not a result of the debt, but rather a consequence of the debtor being held in contempt of a court order.

include the disclosure stamp in an effort to deceive Appellant or otherwise do wrong. Accordingly, Defendants did not violate §1692f.

## IV.  Sawyer Was Not Required to Obtain A Maryland Collection Agency License and, Therefore, its Collection Efforts Did Not Violate the FDCPA

Appellant next argues that Sawyer was required to obtain a collection agency license pursuant to the MCALA, and that §§1692e(5) and 1692f prohibit Sawyer from collecting or attempting to collect a debt without such a license. Appellant's Br. at 34-35. Appellant's claim fails, however, because Sawyer is not a "collection agency" as a matter of Maryland law and, therefore, was not required to obtain a license.

MCALA provides that "a person must have a license whenever the person does business as a collection agency in this State." Md. Code Ann., Bus. Reg. § 7-301(a) (2013) (hereinafter cited as "Bus. Reg."). The relevant MCALA section defines a "collection agency" as a person who engages directly or indirectly in the business of "(i) collecting for, or soliciting from another, a consumer claim; or (ii) collecting a consumer claim the person owns, if the claim was in default when the person acquired it." Bus. Reg. §7-101(c)(1)(i) and (ii). MCALA does not "require licensing for businesses that only collect their own consumer debts." *Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 726 (D. Md. 2011) (quoting testimony from legislative file of MCALA); *see also Fontell*, 870 F. Supp. 2d at

408-09 (holding that homeowner association was not a collection agency within the meaning of the MCALA "when it took action to collect fees on its own behalf and under its own name, prior to Appellant's default.").

As discussed *infra* at Section I, Sawyer – as landlord under the Lease – attempted to collect overdue rent from Appellant, its tenant.  J.A. 103, 107.  Sawyer hired Tapper to file a collection lawsuit against Appellant, which he did in Sawyer's own name.  J.A. 103.  Indeed, the collection lawsuit and district court forms undisputedly identify Sawyer as the Appellant/judgment creditor, which was collecting a debt on its own behalf in its own name.  J.A. 54, 56, 103.  Therefore, Bus. Reg. §7-101(c)(1)(i) does not apply because Sawyer was not collecting debts on behalf of another entity.  Thus, only Bus. Reg. §7-101(c)(1)(ii), which governs one collecting a consumer claim the person owns if the claim was in default when the person acquired it, arguably has any application to the instant appeal.

Section 7-101(c)(1)(ii)'s plain definition of collection agency includes only those companies which collect consumer claims they own "if the claim was in default when the person acquired it." *Id.*  In this regard, MCALA was amended in 2007 to add §7-101(c)(1)(ii) to include additional entities that collect debts once they are default within the definition of a collection agency.  *See* H.B. 1324

-38-

(2007).[9]  House Bill 1324 specifically added subsection (ii) to §7-101(c)(1), which includes companies that obtain and collect delinquent debts within the definition. *See* Addendum at A6.  Prior to the 2007 amendment, such companies were not considered collection agencies under MCALA and, therefore, companies that acquired debts <u>prior</u> to those debts being in default are *de facto* not included in the definition of collection agency either.

The amendment's legislative history unequivocally states that H.B. 1324's changes to the definition of collection agency "only apply to persons who acquire for collection debt that is already in default." *Id.* at A20.  Supporting testimony for the Bill from the Department of Labor, Licensing and Regulation ("DLLR"), which is the department mandated to enforce the licensing law, provides that "[o]ther businesses that are collecting their own debts continue to be excluded from this law." *Id.* at A21.  DLLR's testimony explained the background as follows:

> In 1978, Maryland enacted the Collection Agencies Licensing Act, which required any person engaged in the practice of collecting debts for others to be licensed by the State Collection Agency Licensing Board. ... This Board has unanimously recommended that this legislation be adopted to address a "loophole" that has developed within the past few years. ***Creditors use licensed debt collecting organizations to recover their***

---

[9]    House Bill 1324 and its legislative history are attached in the Addendum hereto at A5 through A33.

> ***delinquent accounts from consumers.*** Due to abusive
> collection practices by some debt recovery organizations,
> both the federal government, Maryland and other states
> passed legislation to regulate the activities of these
> entities.

*Id.* (emphasis added)  Thus, the amendment was expressly enacted for the limited

purpose of including those few companies in Maryland that purchase and then

collect defaulted debts within the purview of the definition. *See id.* at A14 (Fiscal

and Policy Note indicating that "the bill would make 40 debt purchasers subject to

State regulation," which "are not currently subject to regulation").

As a property management company and landlord under the Lease, Sawyer

obtains tenant debts (*i.e.*, rent) <u>before</u> those debts are in default and collects those

debts in its own name.  The Amended Complaint is devoid of any good faith

allegation that Sawyer only obtains tenant debts once they become delinquent.

J.A. 12 at ¶10 (alleging only that Sawyer "engages in the business of collecting

debts alleged to be due").  Instead, the documents referenced in the Amended

Complaint demonstrate that Sawyer acquired the debt when the Lease was signed –

a time when the debt could not conceivably have been in default.

Appellant's reliance on *Bradshaw*, *Fontell*, and *Hauk* in support of her

argument that Sawyer was required to be licensed is misplaced.  The defendants in

both *Bradshaw* and *Hauk* conceded that they acquired the delinquent debt when it

was already in default and, therefore, those cases are inapposite. *See Bradshaw*,

765 F. Supp. 2d at 726 and *Hauk*, 749 F. Supp. 2d at 366. *Fontell* does not support Appellant's position either. In *Fontell*, a homeowners' association attempted to collect a fee that a condominium owner owed to the association. *See Fontell*, 870 F. Supp. 2d at 400. The association employed a property management agent to recover the debt, and the court found that the management agent should have been licensed as a collection agency because it was collecting the debt on behalf of another and, therefore, acted as a debt collector under Maryland law. *See id.* at 409. On the other hand, the *Fontell* court found that the homeowners' association was not required to have a collection agency license, because "there [was] no question that the homeowner association was not acting as a collection agency when it took action to collect fees on its own behalf and under its own name." *Id.* Like the homeowners' association in *Fontell*, Sawyer owned the debt and attempted to collect it in its own name – not on behalf of another – and Appellant's argument to the contrary is unavailing. Appellant's Br. at 38.

Thus, Sawyer is not a "collection agency" as a matter of Maryland law and, therefore, was not required to obtain a license to collect debts in its own name. As such, this Court should affirm the District Court's order dismissing Appellant's FDCPA claims arising out of MCALA's licensing requirements.

## CONCLUSION

This Court should affirm the District Court's Order dismissing the FDCPA claim, with prejudice, in its entirety. To the extent this Court reverses the District Court's finding that (1) Sawyer collects debts in its own name and (2) Sawyer's primary business is not debt collection, this Court should affirm the District Court's order on the basis that Sawyer is exempt from liability under the FDCPA pursuant to 15 U.S.C. §1692a(6)(F)(iii).

Respectfully submitted,


_____/s/ Donald A. Rea_____
Donald A. Rea (Bar No. 23194)
Geoffrey M. Gamble (Bar No. 28919)
SAUL EWING LLP
Lockwood Place
500 East Pratt Street
Baltimore, Maryland 21202
410-332-8848
410-332-8115 (facsimile)
drea@saul.com
ggamble@saul.com

Counsel for Appellee Sawyer Property
Management of Maryland, LLC


_____/s/ James E. Dickerman_____
James E. Dickerman (Bar No. 10687)
Lauren E. Marini (Bar No. 30057)
ECCLESTON & WOLF, PC
7240 Parkway Drive, 4th Floor
Hanover, Maryland 21076
(410) 752-7474
(410) 752-0611 (facsimile)
dickerman@ewmd.com
marini@ewmd.com

Counsel for Appellee Jeffrey Tapper


Dated: November 5, 2013

-42-

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

<u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.   This brief complies with the type-volume limitation of Fed. R. App. P.
32(a)(7)(C) because:

      this brief contains 9,294 words, excluding the parts of the brief
      exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.   This brief complies with the typeface requirements of Fed. R. App. P.
32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6)
because:

      this brief has been prepared in proportional spaced typeface using
      <u>Microsoft Word</u> in <u>14 point Times New Roman</u>

                     /s/ Geoffrey M. Gamble
                    Geoffrey M. Gamble

                    Counsel for Appellee Sawyer Property
                    Management of Maryland, LLC

Dated:  November 5, 2013

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of November, 2013, a copy of the foregoing Consolidated Response Brief of Appellees Sawyer Property Management of Maryland, LLC and Jeffrey Tapper was sent, via first-class mail, postage prepaid to:

> E. David Hoskins
> Max F. Brauer
> THE LAW OFFICES OF
> E. DAVID HOSKINS, LLC
> 16 E. Lombard Street, Suite 400
> Baltimore, Maryland 21202

_/s/ Geoffrey M. Gamble_
Geoffrey M. Gamble

1244908.4 11/05/2013

-44-

# ADDENDUM TO BRIEF OF DEFENDANTS-APPELLEES

# TABLE OF CONTENTS

**Document Description**                                                    **Page**

15 U.S.C. § 1692a..............................................................A1

Md. Code Ann., Bus. Reg., §7-101...........................................A3

H.B. 1324, 423rd Leg., 2007 Reg. Sess. (Md. 2007)
and Its Legislative History...................................................A5

**15 U.S.C.**
United States Code, 2012 Edition
Title 15 - COMMERCE AND TRADE
CHAPTER 41 - CONSUMER CREDIT PROTECTION
SUBCHAPTER V - DEBT COLLECTION PRACTICES
Sec. 1692a - Definitions
From the U.S. Government Printing Office, www.gpo.gov

## §1692a. Definitions

As used in this subchapter—

(1) The term "Bureau" means the Bureau of Consumer Financial Protection.

(2) The term "communication" means the conveying of information regarding a debt directly or indirectly to any person through any medium.

(3) The term "consumer" means any natural person obligated or allegedly obligated to pay any debt.

(4) The term "creditor" means any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.

(5) The term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

(6) The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. The term does not include—

(A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor;

(B) any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts;

(C) any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties;

(D) any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt;

(E) any nonprofit organization which, at the request of consumers, performs bona fide consumer credit counseling and assists consumers in the liquidation of their debts by receiving payments from such consumers and distributing such amounts to creditors; and

(F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such

person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

(7) The term "location information" means a consumer's place of abode and his telephone number at such place, or his place of employment.

(8) The term "State" means any State, territory, or possession of the United States, the District of Columbia, the Commonwealth of Puerto Rico, or any political subdivision of any of the foregoing.

(Pub. L. 90–321, title VIII, §803, as added Pub. L. 95–109, Sept. 20, 1977, 91 Stat. 875; amended Pub. L. 99–361, July 9, 1986, 100 Stat. 768; Pub. L. 111–203, title X, §1089(2), July 21, 2010, 124 Stat. 2092.)

### AMENDMENTS

**2010**—Par. (1). Pub. L. 111–203 added par. (1) and struck out former par. (1) which read as follows: "The term 'Commission' means the Federal Trade Commission."

**1986**—Par. (6). Pub. L. 99–361 in provision preceding cl. (A) substituted "clause (F)" for "clause (G)", struck out cl. (F) which excluded any attorney-at-law collecting a debt as an attorney on behalf of and in the name of a client from term "debt collector", and redesignated cl. (G) as (F).

### EFFECTIVE DATE OF 2010 AMENDMENT

Amendment by Pub. L. 111–203 effective on the designated transfer date, see section 1100H of Pub. L. 111–203, set out as a note under section 552a of Title 5, Government Organization and Employees.

A2

*Md. BUSINESS REGULATION Code Ann. § 7-101*

Annotated Code of Maryland
Copyright 2013 by Matthew Bender and Company, Inc., a member of the LexisNexis Group
All rights reserved.

\*\*\* Statutes current through the 2013 General Assembly Regular Session \*\*\*

BUSINESS REGULATION
TITLE 7. COLLECTION AGENCIES
SUBTITLE 1. DEFINITIONS; GENERAL PROVISIONS

Md. BUSINESS REGULATION Code Ann. § 7-101 (2013)

§ 7-101. Definitions

(a) In general. -- In this title the following words have the meanings indicated.

(b) Board. -- "Board" means the State Collection Agency Licensing Board.

(c) Collection agency. -- "Collection agency" means a person who engages directly or indirectly in the business of:

(1) (i) collecting for, or soliciting from another, a consumer claim; or

(ii) collecting a consumer claim the person owns, if the claim was in default when the person acquired it;

(2) collecting a consumer claim the person owns, using a name or other artifice that indicates that another party is attempting to collect the consumer claim;

(3) giving, selling, attempting to give or sell to another, or using, for collection of a consumer claim, a series or system of forms or letters that indicates directly or indirectly that a person other than the owner is asserting the consumer claim; or

(4) employing the services of an individual or business to solicit or sell a collection system to be used for collection of a consumer claim.

(d) Commissioner. -- "Commissioner" means the Commissioner of Financial Regulation.

(e) Consumer claim. -- "Consumer claim" means a claim that:

(1) is for money owed or said to be owed by a resident of the State; and

(2) arises from a transaction in which, for a family, household, or personal purpose, the resident sought or got credit, money, personal property, real property, or services.

(f) License. -- "License" means a license issued by the Board to do business as a collection agency.

(g) Licensed collection agency. -- "Licensed collection agency" means a person who is licensed by the Board to do business as a collection agency.

**HISTORY:** An. Code 1957, art. 56, § 323; 1992, ch. 4, § 2; 1996, ch. 58; ch. 326, § 2; 2007, ch. 472.

A3

LexisNexis® About LexisNexis  | Privacy Policy  | Terms & Conditions  | Contact Us
Copyright ©  2013 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

A4

Case 1:10-cv-00113-RDB   Document 16-9   Filed 05/26/10   Page 1 of 29

Legislative History for 2007 chap. 472(Business Regulation 7-101)
HB1324

Complete file.

# HOUSE BILL 1324

C2                                                                          7lr0116

By: *Chair, Economic Matters Committee (By Request – Departmental – Labor,*
*Licensing and Regulation)*
Introduced and read first time: February 28, 2007
Assigned *to:* Rules and Executive Nominations
Re-referred to: Economic Matters, March 2, 2007

Committee Report: Favorable
House action: Adopted
Read second time: March 25, 2007

CHAPTER _____

1   AN ACT concerning

2                              **Collection Agencies – Licensing**

3   FOR the purpose of altering the definition of "collection agency" as it relates to the
4        licensing and regulation of collection agencies; requiring certain additional
5        persons to be licensed by the *State Collection Agency Licensing* Board before
6        they may collect consumer claims in this State; establishing certain
7        qualifications for a collection agency license; altering the conditions under
8        which the Board may *reprimand certain* licensees or suspend or revoke certain
9        licenses; authorizing certain persons to continue to collect certain consumer
10       claims without being licensed if the person applies for a license within a *certain*
11       *time period*; and generally relating to the licensing and regulation of collection
12       agencies.

13  BY repealing and reenacting, with amendments,
14       Article – Business Regulation
15       Section 7–101, 7–303, and 7–308
16       Annotated Code of Maryland
17       (2004 Replacement Volume and 2006 Supplement)

EXPLANATION: CAPITALS INDICATE MATTER ADDED TO EXISTING LAW.
[Brackets] indicate matter deleted from existing law.
Underlining indicates amendments to bill.
~~Strike out~~ indicates matter stricken from the bill by amendment or deleted from the law by
amendment.

2                                              HOUSE BILL 1324

1          SECTION 1. BE IT ENACTED BY THE GENERAL ASSEMBLY OF
2    MARYLAND, That the Laws of Maryland read as follows:

3                              **Article – Business Regulation**

4    7–101.

5          (a)    In this title the following words have the meanings indicated.

6          (b)    "Board" means the State Collection Agency Licensing Board.

7          (c)    "Collection agency" means a person who[:

8                 (1)]   engages directly or indirectly in the business of:

9                 (1)    (I)    collecting for, or soliciting from another, a consumer claim;
10   OR

11                       (II)   COLLECTING A CONSUMER CLAIM THE PERSON OWNS, IF
12   THE CLAIM WAS IN DEFAULT WHEN THE PERSON ACQUIRED IT;

13                (2)    [in collection of a consumer claim by its owner, uses] COLLECTING
14   A CONSUMER CLAIM THE PERSON OWNS, USING a name or other artifice that
15   indicates that another party is attempting to collect the consumer claim;

16                (3)    [gives, sells, attempts] GIVING, SELLING, ATTEMPTING to give or
17   sell to another, or [uses] USING, for collection of a consumer claim, a series or system
18   of forms or letters that indicates directly or indirectly that a person other than the
19   owner is asserting the consumer claim; or

20                (4)    [employs] EMPLOYING the services of an individual or business to
21   solicit or sell a collection system to be used for collection of a consumer claim.

22         (d)    "Commissioner" means the Commissioner of Financial Regulation.

23         (e)    "Consumer claim" means a claim that:

24                (1)    is for money owed or said to be owed by a resident of the State; and

HOUSE BILL 1324                                    3

1    (2)   arises from a transaction in which, for a family, household, or
2  personal purpose, the resident sought or got credit, money, personal property, real
3  property, or services.

4    (f)   "License" means a license issued by the Board to do business as a
5  collection agency.

6    (g)   "Licensed collection agency" means a person who is licensed by the Board
7  to do business as a collection agency.

8  7–303.

9    (a)   Within 60 days after an applicant submits an application for a license
10 and pays the application fee, the Board shall approve or deny the application.

11   [(b)   Subject to the hearing provisions of § 7–309 of this subtitle, the Board
12 may deny a license to an applicant if:

13   (1)   the applicant fraudulently or deceptively obtains or attempts to
14 obtain a license for the applicant or for another person;

15   (2)   the applicant fraudulently uses a license;

16   (3)   the applicant:

17         (i)   has had a license revoked; or

18         (ii)  is responsible for an act or omission that resulted in
19 revocation of a license;

20   (4)   a person who, when the application is submitted, is an agent,
21 director, employee, member, officer, owner, partner, or spouse of the applicant:

22         (i)   has had a license revoked; or

23         (ii)  is responsible for an act or omission that resulted in
24 revocation of a license; or

25   (5)   otherwise fails to meet the requirements for licensure.]

26   (B)   TO QUALIFY FOR A LICENSE, AN APPLICANT SHALL SATISFY THE
27 BOARD THAT THE APPLICANT IS OF GOOD MORAL CHARACTER AND HAS

A8

4                              HOUSE BILL 1324

1   SUFFICIENT FINANCIAL RESPONSIBILITY, BUSINESS EXPERIENCE, AND
2   GENERAL FITNESS TO:

3          (1)   ENGAGE IN BUSINESS AS A COLLECTION AGENCY;

4          (2)   WARRANT THE BELIEF THAT THE BUSINESS WILL BE
5   CONDUCTED LAWFULLY, HONESTLY, FAIRLY, AND EFFICIENTLY; AND

6          (3)   COMMAND THE CONFIDENCE OF THE PUBLIC.

7      (C)   THE BOARD MAY DENY AN APPLICATION FOR A LICENSE TO ANY
8   PERSON WHO:

9          (1)   HAS COMMITTED ANY ACT THAT WOULD BE A GROUND FOR
10  REPRIMAND, SUSPENSION, OR REVOCATION OF A LICENSE UNDER THIS
11  SUBTITLE; OR

12         (2)   OTHERWISE FAILS TO MEET THE REQUIREMENTS FOR
13  LICENSURE.

14     (D)   (1)   THE DENIAL OF AN APPLICATION UNDER THIS SECTION IS
15  SUBJECT TO THE HEARING PROVISIONS OF § 7–309 OF THIS SUBTITLE.

16         (2)   AN APPLICANT WHO SEEKS A HEARING ON A LICENSE
17  APPLICATION DENIAL SHALL FILE A WRITTEN REQUEST FOR A HEARING WITHIN
18  45 DAYS FOLLOWING RECEIPT OF THE NOTICE TO THE APPLICANT OF THE
19  APPLICANT'S RIGHT TO A HEARING.

20  7–308.

21     (a)   Subject to the hearing provisions of § 7–309 of this subtitle, the Board
22  may reprimand a licensee or suspend or revoke a license if the licensee OR ANY
23  OWNER, DIRECTOR, OFFICER, MEMBER, PARTNER, OR AGENT OF THE LICENSEE:

24         [(1)   fraudulently or deceptively obtains or attempts to obtain a license
25  for the licensee or for another person;

26         (2)   fraudulently or deceptively uses a license;]

HOUSE BILL 1324                                5

1    (1)    MAKES ANY MATERIAL MISSTATEMENT IN AN APPLICATION
2  FOR A LICENSE;

3    (2)    IS CONVICTED UNDER THE LAWS OF THE UNITED STATES OR
4  OF ANY STATE OF:

5    (I)    A FELONY; OR

6    (II)    A MISDEMEANOR THAT IS DIRECTLY RELATED TO THE
7  FITNESS AND QUALIFICATION OF THE PERSON TO ENGAGE IN THE COLLECTION
8  AGENCY BUSINESS;

9    (3)    IN CONNECTION WITH THE COLLECTION OF ANY CONSUMER
10  CLAIM:

11    (I)    COMMITS ANY FRAUD; OR

12    (II)    ENGAGES IN ANY ILLEGAL OR DISHONEST ACTIVITIES;

13    [(3)] (4)    knowingly or negligently violates the Maryland Consumer
14  Debt Collection Act; or

15    [(4)] (5)    fails to comply with a lawful order that the Board passes
16  under this title.

17    (b)    If the Board finds that a ground for suspension or revocation of a license
18  applies to more than 1 place of business that the licensee operates, the Board may act
19  against:

20    (1)    each license of the licensee; or

21    (2)    only the licenses to which the ground applies.

22    (C)    IN DETERMINING WHETHER TO REPRIMAND A LICENSEE OR TO
23  SUSPEND OR REVOKE A LICENSE FOR A REASON DESCRIBED IN SUBSECTION
24  (A)(2) OF THIS SECTION, THE BOARD SHALL CONSIDER:

25    (1)    THE NATURE OF THE CRIME;

6                    · HOUSE BILL 1324

1          (2)  THE RELATIONSHIP OF THE CRIME TO THE ACTIVITIES
2   AUTHORIZED BY THE LICENSE;

3          (3)  WITH  RESPECT TO A FELONY, THE RELEVANCE OF THE
4   CONVICTION TO THE FITNESS AND QUALIFICATION OF THE LICENSEE TO
5   ENGAGE IN THE COLLECTION AGENCY BUSINESS;

6          (4)  THE LENGTH OF TIME SINCE THE CONVICTION; AND

7          (5)  THE BEHAVIOR AND ACTIVITIES OF THE LICENSEE SINCE THE
8   CONVICTION.

9          SECTION 2. AND BE IT FURTHER ENACTED, That, in the absence of an
10  order by the State Collection Agency Licensing Board to the contrary, a person that
11  owned consumer claims and was not required to have a collection agency license
12  immediately prior to the effective date of this Act may continue to collect those
13  consumer claims without being licensed, as required by Section 1 of this Act, until the
14  State Collection Agency Licensing Board approves or disapproves the person's
15  application for a license if the person applies for a license no later than 30 days after
16  the effective date of this Act.

17         SECTION 3. AND BE IT FURTHER ENACTED, That this Act shall take effect
18  October 1, 2007.

Approved:

_____
                                          Governor.

_____
                          Speaker of the House of Delegates.

_____
                             President of the Senate.

ANALYST: TAMI 5460

SENATE FINANCE COMMITTEE - 2007 SESSION

HOUSE BILL 1324

COLLECTION AGENCIES - LICENSING

SPONSOR: CHAIR, ECONOMIC MATTERS COMMITTEE

(BY REQUEST – DEPARTMENTAL – LABOR, LICENSING AND REGULATION)

---

HOUSE BILL 1324 EXTENDS THE PURVIEW OF THE STATE COLLECTION AGENCY LICENSING BOARD TO INCLUDE PERSONS WHO COLLECT CONSUMER CLAIMS ACQUIRED WHEN THE CLAIMS WERE IN DEFAULT. THESE PERSONS ARE KNOWN AS "DEBT PURCHASERS" SINCE THEY PURCHASE DELINQUENT CONSUMER DEBT RESULTING FROM CREDIT CARD TRANSACTIONS AND OTHER BILLS; THESE PERSONS THEN OWN THE DEBT AND SEEK TO COLLECT FROM CONSUMERS LIKE OTHER COLLECTION AGENCIES WHO ACT ON BEHALF OF ORIGINAL CREDITORS.

FURTHER, THE BILL SPECIFIES QUALIFICATIONS FOR LICENSURE, CLARIFIES THE GROUNDS FOR DENIAL OF AN APPLICATION, AND ESTABLISHES THE RIGHT TO A HEARING BEFORE THE BOARD FOR PERSONS DENIED A LICENSE. GROUNDS FOR REPRIMANDING A LICENSEE OR SUSPENDING OR REVOKING A LICENSE ARE CLARIFIED AND EXTENDED TO INCLUDE SPECIFIED FRAUDULENT OR UNSCRUPULOUS ACTIVITY BY AN OWNER, DIRECTOR, OFFICER, MEMBER, PARTNER, OR AGENT OF THE LICENSEE.

---

NO AMENDMENTS.    NO OPPOSITION AT THE COMMITTEE HEARING. STATE REVENUES COULD INCREASE BY $16,000 IN FISCAL 2008 FROM LICENSING "DEBT PURCHASERS".

MOVE THE ADOPTION OF THE FAVORABLE COMMITTEE REPORT.

**HB 1324**

### Department of Legislative Services
Maryland General Assembly
2007 Session

### FISCAL AND POLICY NOTE

| | |
|---|---|
| House Bill 1324 | (Chair, Economic Matters Committee) |
| | (By Request – Departmental – Labor, Licensing and Regulation) |
| Economic Matters | Finance |

---

#### Collection Agencies – Licensing

---

This departmental bill extends the purview of the State Collection Agency Licensing Board to include persons who collect a consumer claim acquired when the claim was in default. These persons may temporarily continue to operate without a license after the bill's October 1, 2007 effective date, pending board approval of a license application if the application is made within 30 days.

The bill specifies qualifications for licensure, clarifies the grounds for denial of an application, and establishes the right to a hearing before the board for persons denied a license. Grounds for reprimanding a licensee or suspending or revoking a license are clarified and extended to include specified fraudulent or unscrupulous activity by an owner, director, officer, member, partner, or agent of the licensee.

---

#### Fiscal Summary

**State Effect:** General fund revenues would increase by an estimated $16,000 in FY 2008 due to the new licensing requirements. Future year revenues reflect the board's renewal cycle and growth in the number of licensees. Expenditures would not be affected.

| (in dollars) | FY 2008 | FY 2009 | FY 2010 | FY 2011 | FY 2012 |
|---|---|---|---|---|---|
| GF Revenue | $16,000 | $800 | $17,600 | $800 | $19,200 |
| Expenditure | $0 | $0 | $0 | $0 | $0 |
| Net Effect | $16,000 | $800 | $17,600 | $800 | $19,200 |

Note:() = decrease; GF = general funds; FF = federal funds; SF = special funds; - = indeterminate effect.

**Local Effect:** None.

A13



**Small Business Effect:** The Department of Labor, Licensing, and Regulation (DLLR) has determined that this bill has minimal or no impact on small business (attached). *Legislative Services concurs with this assessment.*

## Analysis

[illegible] A [illegible]erson must ha[illegible]e a license [illegible] the [illegible]tate Collection Agency Licensin[illegible] whenever the person does busi[illegible] as a collection [illegible] generally [illegible] (1) engaging in the business of collecting a consumer claim [illegible] using a name or other arti[illegible] that indicates that another party is attempting to collect a consumer claim [illegible] using a system of forms that indicates that a person other than the owner is asserting a consumer claim; and [illegible] employing ser[illegible] to solicit a collection system to be used for colle[illegible] of a consumer claim. [illegible] consumer claim is de[illegible] as a claim for money owed by [illegible] resident of the [illegible]tate that arises from a transaction [illegible] which a private party sought cre[illegible] money, proper[illegible] or ser[illegible].

[illegible] applicant for a license must submit an app[illegible] under oath and pay a fee [illegible] for each place of business. [illegible] board is also [illegible] a [illegible] bond for the bene[illegible] any member o[illegible] public who has a loss or other damage as [illegible] result of a violation of the [illegible] Collection Agency Licensing Act [illegible] the estimated cost of the bond is [illegible] per year. [illegible] board may deny a license if an applicant [illegible] or attempts to obtain [illegible] or if the applicant or associate has had a license [illegible] licenses are [illegible] valid for a [illegible] of two years.

[illegible] person may not do business as a collection agency without a State license. A person who violates this la[illegible] is guilty of a misdemeanor and on con[illegible] is subject to a fine of up to [illegible] 1,000 [illegible] imprisonment for up to si[illegible] months or both.

[illegible] DLLR advises that the [illegible]tate [illegible] Collection Agency Licensing Board currently regulates [illegible] collection agencies. [illegible] department [illegible] debt purchasers subject to State regulation. [illegible] purchasers are not currently subject to regulation as they purchase the [illegible] directly from the creditor and are generally co[illegible] as a p[illegible] of their [illegible]. Although [illegible] federal [illegible] Debt Collection Practices [illegible] consumers [illegible] currently protected in these transactions by the State Collection Agency Licensing Board.

[illegible] fee[illegible] revenues would increase by an estimated [illegible] in [illegible] debt purchasers become licensed by the State Collection Agency Licensing Board. [illegible] board generally issues a two-year license that is renewable in

even-numbered fiscal years; fiscal 2009 revenues would be limited to new licenses, which would expire the following year. The department estimates that two new establishments would apply for a license each year, which would result in $800 in general fund revenues in fiscal 2009. Future year revenues reflect potential growth in the industry of two new establishments a year, no attrition, and the board's renewal cycle.

*Debt purchasers would represent a relatively small percentage of the total number of collection agencies licensed by the board. The department advises that the additional licensing activity could be handled with existing resources.*

### Additional Information

**Prior Introductions:** None.

**Cross File:** None.

**Information Source(s):** Office of Administrative Hearings; Department of Labor, Licensing, and Regulation; Department of Legislative Services

**Fiscal Note History:**     First Reader - March 20, 2007
mll/ljm

Analysis by: Suzanne O. Potts                           Direct Inquiries to:
                                                        (410) 946-5510
                                                        (301) 970-5510

HB 1324 / Page 3

A15

ANALYSIS OF ECONOMIC IMPACT ON SMALL BUSINESSES

**TITLE OF BILL:**    Collection Agencies-Licensing Board-Licensing

**BILL NUMBER:**    HB 1324

**PREPARED BY:**    Labor, Licensing & Regulation

(Dept./Agency)

### PART A.  ECONOMIC IMPACT RATING

This agency estimates that the proposed bill:

    **X**   WILL HAVE MINIMAL OR NO ECONOMIC IMPACT ON MARYLAND SMALL BUSINESS

                   OR

    \_\_\_\_   WILL HAVE MEANINGFUL ECONOMIC IMPACT ON MARYLAND SMALL BUSINESSES

### PART B.  ECONOMIC IMPACT ANALYSIS

The proposed legislation will have no economic impact on small business in Maryland.

Case 1:10-cv-00113-RDB   Document 16-9   Filed 05/26/10   Page 13 of 29

Department of Legislative Services
Maryland General Assembly

| **FISCAL NOTE INFORMATION**
**ATTACH TO BILL** |

**TO:**    House Committee -
Chairman, Economic Matters

Senate Committee -
→    Chairman, Finance

Bill Sponsor, Economic Matters Committee, Chair

**DATE:**    April 04, 2007

**FROM:**    John F. Rixey
Coordinating Analyst

**RE:**    **House Bill 1324**
This is a Third Reader w/no change or favorable

_____

We have examined the third reader bill for the above mentioned bill and have found no change in the original fiscal note.

cc: Fiscal Note File

JFR/ncs

Legislative Services Building - 90 State Circle - Annapolis, Maryland 21401-1991
(410)946-5510 Fax:(410)946-5529 TDD(410)946-5401



**ECONOMIC MATTERS COMMITTEE**

DERECK E. DAVIS, CHAIRMAN · COMMITTEE REPORT SYSTEM

DEPARTMENT OF LEGISLATIVE SERVICES · 2007 MARYLAND GENERAL ASSEMBLY

# FLOOR REPORT

*Committee Counsel: Robert Smith*

### House Bill 1324

### Collection Agencies - Licensing

**SPONSORS:**
*Chair, Economic Matters Committee (By Request – Departmental – Labor, Licensing and Regulation)*

**COMMITTEE RECOMMENDATION:**

> **FAVORABLE**
>
> House Bill 1324 requires persons who collect consumer claims acquired in default to be licensed as debt collectors under the jurisdiction of the Commissioner of Financial Regulation. The bill includes qualifications for licensure, grounds for denial and discipline, and due process requirements for licensees.

**SUMMARY OF BILL:**

House Bill 1324 is a departmental bill that extends the purview of the State Collection Agency Licensing Board to include persons who collect a consumer claim acquired when the claim was in default. These persons may temporarily continue to operate without a license after the bill's October 1, 2007 effective date, pending board approval of a license application if the application is made within 30 days.

The bill specifies qualifications for licensure, clarifies the grounds for denial of an application, and establishes the right to a hearing before the board for persons denied a license. Grounds for reprimanding a licensee or suspending or revoking a license are clarified and extended to include specified fraudulent or unscrupulous activity by an owner, director, officer, member, partner, or agent of the licensee.

1 of 3

**BACKGROUND:**
**Current Law:**
A person must have a license from the State Collection Agency Licensing Board whenever the person does business as a collection agency, generally defined as (1) engaging in the business of collecting a consumer claim; (2) using a name or other artifice that indicates that another party is attempting to collect a consumer claim; (3) using a system of forms that indicates that a person other than the owner is asserting a consumer claim; and (4) employing services to solicit a collection system to be used for collection of a consumer claim. A consumer claim is defined as a claim for money owed by a resident of the State that arises from a transaction in which a private party sought credit, money, property, or services.

An applicant for a license must submit an application under oath and pay a fee of $400 for each place of business. An applicant is also required to execute a $5,000 surety bond for the benefit of any member of the public who has a loss or other damage as the result of a violation of the Maryland Collection Agency Licensing Act or the Maryland Consumer Debt Collection Act; the estimated cost of the bond is $150 per year. The board may deny a license if an applicant fraudulently uses or attempts to obtain a license or if the applicant or associate has had a license revoked. Licenses are generally valid for a period of two years.

A person may not do business as a collection agency without a State license. A person who violates this law is guilty of a misdemeanor and on conviction is subject to a fine of up to $1,000 or imprisonment for up to six months or both.

**Background:**
DLLR advises that the State Collection Agency Licensing Board currently regulates 1,304 collection agencies. The department estimates that the bill would make 40 debt purchasers subject to State regulation. Debt purchasers are not currently subject to regulation, as they purchase the debt directly from the creditor and are generally compensated as a percentage of their recovery. Although this activity falls under the federal Fair Debt Collection Practices Act, Maryland consumers are not currently protected in these transactions by the State Collection Agency Licensing Board.

**Prior Introductions:**
None.

**Cross File:**
None.

2 of 3

**QUESTIONS AND ANSWERS:**

*Q.     What problem is this bill addressing?*

*A.*     Although debt collectors must be licensed in Maryland to collect debts
         owed to a creditor, currently individuals collecting debts owed to
         themselves are exempt.  Creditors have taken to selling defaulted
         receivables at a discount to collectors who are not licensed under Maryland
         law, although they are subject to the federal Fair Debt Collection Practices
         Act.

*Q.     Does this mean I have to get a license to collect money owed to me?*

*A.*     No.  The changes in this bill only apply to persons who acquire for
         collection debt that is already in default.

28 March 2007

**DLLR**

MARTIN O'MALLEY, Governor
ANTHONY BROWN, Lt. Governor

### STATE OF MARYLAND
#### DEPARTMENT OF LABOR, LICENSING AND REGULATION

Testimony in Support of HB 1324
Charles W. Turnbaugh
**Commissioner of Financial Regulation**
**Chairman, Collection Agency Licensing Board**

Thank you for the opportunity to address you regarding this proposed legislation, which is a departmental bill.

In 1978, Maryland enacted the Collection Agencies Licensing Act, which required any person engaged in the practice of collecting debts for others to be licensed by the State Collection Agency Licensing Board. The Collection Agency Licensing Board ("the Board") is made up of two public members, two industry members and the Commissioner of Financial Regulation. This Board has unanimously recommended that this legislation be adopted to address a "loophole" that has developed within the past few years. Creditors use licensed debt collecting organizations to recover their delinquent accounts from consumers. Due to abusive collection practices by some debt recovery organizations, both the federal government, Maryland and other states passed legislation to regulate the activities of these entities.

Maryland law regulates collection firms that collect consumer debt as agents of the creditor (hospitals, retailers, credit card issuers etc). The law does not require licensing for businesses that only collect their **own** consumer debts, unless the business uses a name or other artifice that indicates that another party is attempting to collect the consumer debt. However, the evolution of the debt collection industry has created a "loophole" used by some entities as a means to circumvent current State collection agency laws. Entities, such as "debt purchasers" who enter into purchase agreements to collect delinquent consumer debt rather than acting as an agent for the original creditor, currently collect consumer debt in the State without complying with any licensing or bonding requirement. The federal government has recognized and defined debt purchasers as collection agencies, and requires that these entities fully comply with the Federal Fair Debt Collection Practices Act.

This legislation would include debt purchasers within the definition of a "collection agency," and require them to be licensed by the Board before they may collect consumer claims in this State. Other businesses that are collecting their own debt continue to be excluded from this law. The proposed legislation would also establish certain qualification standards for a collection agency license and authorize the Board to reprimand, suspend or revoke the licenses when certain acts are committed. The proposal would provide Maryland residents with greater protection against persons willing to engage in abusive debt collection practices and provide the Board the authority to enforce State law.

Thank you very much for the opportunity to testify before you today. The Department respectfully requests a FAVORABLE report for HB 1324. I would be happy to answer any questions you may have.

500 N. Calvert Street • Baltimore, MD 21202
410-230-6020 • Fax 410-333-0853

Legislative Office
45 Calvert Street, Room 25
410-260-6075 • Fax 410-260-6081

A21



**DOUGLAS F. GANSLER**
*Attorney General*

**KATHERINE WINFREE**
*Chief Deputy Attorney General*

**JOHN B. HOWARD, JR.**
*Deputy Attorney General*

**WILLIAM LEIBOVICI**
*Chief*
Consumer Protection Division

### STATE OF MARYLAND
### OFFICE OF THE ATTORNEY GENERAL
### CONSUMER PROTECTION DIVISION

WRITER'S DIRECT DIAL NO.
(410) 576-6307

March 22, 2007

The Honorable Dereck E. Davis, Chairman
House Economic Matters Committee
231 Taylor House Office Building
Annapolis, MD 21401-1991

     re:    **House Bill 1324**

Dear Chairman Davis:

     I am writing on behalf of the Consumer Protection Division, Office of the Attorney General in support of House Bill 1324. This bill clarifies that the definition of "Collection Agency" contained in Maryland Code Ann., Bus. Reg. § 7-101, includes businesses that purchase consumer debts that are in default. This bill also broadens the qualifications that a Collection Agency must demonstrate in order to obtain a license to collect consumer debts from the State Collection Agency Licensing Board (the "Licensing Board"). The bill also clarifies the conditions under which the Licensing Board may suspend or revoke a Collection Agency's license.

     The Consumer Protection Division supports this bill because it clarifies that purchasers of consumer debt must be licensed to collect consumer debt in Maryland and establishes appropriate qualifications that Collection Agencies must demonstrate in order to be licensed to collect debt in Maryland. The bill will also provide appropriate authority for the Board to either deny or revoke a collection agency license when a Collection Agency harms consumers. We therefore urge the *House Economic Matter Committee to issue a favorable report on House Bill 1324.*

                   Sincerely,

                   Steven Sakamoto-Wengel
                   Assistant Attorney General

cc: Members, Economic Matters Committee

200 Saint Paul Place ❖ Baltimore, Maryland 21202-2021
Main Office (410) 576-6300 ❖ Main Office Toll Free (888) 743-0023 ❖ D.C. Metro (301) 470-7534
Consumer Complaints and Inquiries (410) 528-8662 ❖ Health Advocacy Unit/Billing Complaints (410) 528-1840
Health Advocacy Unit Toll Free (877) 261-8807 ❖ Homebuilders Division Toll Free (877) 259-4525 ❖ Telephone for Deaf (410) 576-6372

A22

## House Bill 1324 – Collection Agencies - Licensing

Submitted by: The Greater Baltimore Board of REALTORS®, Inc.
Contact:  Carolyn Blanchard Cook, Deputy Executive Vice President, 410-337-7200 or Carolyn@GBBR.org

**Position: Support with Amendment**

House Bill 1324 ("Collection Agencies - Licensing") would include in the definition of collection agency a person who owns the debt IF the debt was in default when the owner acquired it. The members of the Greater Baltimore Board of REALTORS®, Inc. (GBBR) recognize that it is the intent of HB 1324 to close a loophole whereby those principally engaged in the business of collecting debts avoid the statutory requirements of licensure by becoming the owners of the debts that they seek to collect. Currently, the law requires that a debt collector acting on behalf of another must be licensed unless that person has been specifically excluded from the statute. Furthermore, current law exempts owners from licensure when they utilize their own efforts to collect debts owned by them.

GBBR is particularly concerned that a purchaser of rental property wherein one or more tenant is behind in the rent at the time of purchase will be required to become licensed as a collection agent under the new definition proposed in HB 1324. Under this scenario, the purchaser of the delinquent rental property is neither a licensed real estate broker, has not hired an attorney to collect the debt or otherwise meets the exemptions set forth in Section 7-102. GBBR believes that it is not the intent of HB 1324 to require that an owner in the above and similar situations be licensed as a collection agency prior to initiating steps to collect the outstanding debt. To that end, GBBR respectfully offers the following amendment to HB 1324:

(c) "Collection agency" means a person who engages directly or indirectly in the business of:
    1. (I) COLLECTING A CONSUMER CLAIM THE PERSON OWNS, IF THE CLAIM WAS IN DEFAULT WHEN THE PERSON ACQUIRED IT AND THE PRINCIPAL BUSINESS OF THE ACQUIRING OWNER IS THE COLLECTION OF DEBTS;...

GBBR urges a favorable report with the amendment noted above.

Testimony in Support of HB 1324
Eileen (Farnham) Brandenberg
Collection Agency Licensing Board

Chairman, Economic Matters Committee Members, I am Eileen Brandenberg, one of two consumer members on the Collection Agency Licensing Board. The other is Steve Hannan, the director of the Howard County Office of Consumer Affairs, who would be here today in support of the bill but for the death of his mother. I am here to endorse Commissioner Turnbaugh's support for the need to extend collection agency licensing to debt purchasers.

Maryland is doing a good job of protecting its citizens and is in the forefront of states doing so. My perception as a Board member is that the majority of serious debt collection problems now are coming from a small number of maverick collectors and from unregulated newly-evolved kinds of businesses not covered under current licensing laws. Debt purchasers are increasing in number – problems with their debt collection practices need to come under the same regulations that govern other collectors. To keep doing the job of protecting Marylanders we need adequate tools to give us a measure of control over the actions of businesses that now exist to collect consumer debts outside the scope of traditional collection agencies.

It is frustrating to hear of complaints that are outside our authority only because the purchase of a debt has put the collector outside the current definition of "collection agency." That needs to be changed to meet the needs of the times, so valid complaints about improper collection behavior can be dealt with regardless of how the company obtained the debt for collection. Our residents need to have this protection and it's a measure we need to keep doing our jobs effectively. The Board's authority needs to evolve along with changes like this in the collection industry.

Please support passage of this HB 1324 to extend normal collection requirements and protections to consumers whose delinquent debt was purchased rather than assigned to a collector. Thank you.

3/21/2007

A24

## Susan Hayes
## Statement on House Bill 1324

>
Chairman Davis and members of the Committee, thank you for the
opportunity to address you regarding this proposed legislation.

The following information is a compilation of information from several
articles published by the Asset Buyers Program at ACA International
(formerly known as the American Collectors Association).
>
> The traditional method of dealing with distressed accounts has been
for creditors to assign these accounts to a collection agency.  These
agencies, operating under a contingency fee arrangement with the
creditor, keep a portion of the amount recovered and return the balance
to the creditor.  Today, a different option is available - selling
accounts receivables to a third party debt collector at a discount.
>
> Whether delinquent debt is collected by a third party collector on
behalf of a creditor or is purchased by an entity that regularly
collects debts and makes debt collection its principal purpose, the
collection activity will be covered by the Federal Debt Collection
Practices Act.  Such a debt purchaser does not step in to the shoes of
the creditor, rather, she is regarded as an independent collector of
past due debts subject to the provision of the FDCPA.
>

> The leading case on the subject, Kimber v. Federal Financial Corp.,
> analyzes the FDCPA definitions of creditor, debtor and the exemptions
under the law. The FDCPA states that the term creditor means any person
who offers or extends credit creating a debt or to whom a debt is owed,
but such term does not include any person to the extent that he
receives an assignment or transfer of a debt **in default** solely for the
purpose of facilitating collection of such debt for another.
>>
>HB 1324 closes a loophole in licensing of debt collectors under
Maryland law.  Just because a professional collector of defaulted debt
"purchases" the debt, frequently on a contingent fee basis, should not
exclude them from the licensing requirements of Maryland law concerning
debt collectors.
>
> Currently I serve, and have for the last twelve years, on the
Maryland Collection Agency Licensing Board.
>
> I believe it is important to mandate that debt purchasers/debt
acquisition organizations be licensed as a collection agency; to
protect our citizens from abusive debt collection practices.  I urge a
favorable report of HB 1324.
>
>
>

Case 1:10-cv-00113-RDB   Document 16-9   Filed 05/26/10   Page 22 of 29

## MARYLAND/DISTRICT OF COLUMBIA CREDITORS BAR ASSOCIATION

110 WEST ROAD, SUITE 222
TOWSON, MARYLAND 21204

410-823-2222                                    FAX: 410-823-2483

E-MAIL: STUARTBLATT@AOL.COM

Stuart Blatt                          March 21, 2007
President

Chairman:  Dereck E. Davis
Vice Chairman:  David D. Rudolph
Economic Matters Committee (ECM)
Room 231, House Office Building
Annapolis, MD  21401-1912

Re:  **HB 1324**

Dear Mr. Davis, Mr. Rudolph & Committee Members:

My name is Stuart R. Blatt and I am President of the Maryland/District of Columbia Creditors Bar Association.  The Bar Association is comprised of law firms throughout the State of Maryland who represent some of the most prominent banks, financial institutions, insurance companies, health providers etc. in the country. Our member law firms practice in all the counties throughout the State.

I am writing you in connection with House Bill 1324 which is scheduled for a Hearing on March 22, 2007 at 1:00 p.m. Our concern is that we believe that:

1. Portions of the Bill are incapable of legal comprehension and needs clear definitions to be more readily subject to accurate interpretation.

2. The Bill is unworkable and has certain portions such as the denial of a license that could be more clearly defined, and

3. The Bill is disruptive to the stream of commerce.

A26

Page Two
March 21, 2007

Banks, financial institutions, investors and members of the industry we represent concur with the *purpose* of altering the definitions as it relates to licensing but are concerned about the rather unclear language and content of House Bill 1324. The apparent nature of the bill is to include additional persons who acquire a consumer claim, when that "claim, was in default, when the person acquired it." The inclusion of "claim(s) in default" targets a secondary claim(s) market, the beginnings of which parallel the century old principle of *factoring*. The secondary industry grew substantially following the defaults of savings and loan institutions and the sale of claims by the Resolution Trust.

Consumer claims in default approximate $11 trillion. Annual sales of the face value of claims, for example, credit card, automotive and healthcare industry claims etc., in default, has grown into a $100 billion U.S. industry. Sales of defaulted claims by the leading financial institutions accelerate cash flow, recapture revenue, improve liquidity while at the same time mitigate risk.The result is creating a savings and lowering the cost of credit to the American consumer, the majority of whom are not in default.

The secondary market has become a staple of the U.S. economy. Major claim sales are made to investors with access to substantial funds necessary to purchase claims in default and a resale of portions of portfolios may occur to subsequent purchasers who cannot afford a single large investment. The initial and subsequent *investor* purchases often do not include *collecting* of a consumer claim. If the investor does not engage in the collecting of a claim or if the investor retains the services of an industry representative for collecting a claim they should not be subject to licensing by the mere fact of ownership.

If an industry representative engages in collecting, we agree with the bill, that such an entity should be subject to licensing. Does mere ownership require licensing or is the act of collecting, require licensing. We submit the bill needs additional clarification for the aforementioned reasons and the additional reasons that follow.

A27

Case 1:10-cv-00113-RDB   Document 16-9   Filed 05/26/10   Page 24 of 29

Page Three
March 21, 2007

Further objections to provisions in House Bill 1324:

a.      Page 3, (B) Lines 21 -24. The attempt by an applicant for
        licensing to meet the conditions of licensing by showing
        "sufficient    financial    responsibility,    business
        experience (an investors experience or collection
        experience is undefined) and general fitness" are
        incapable of definition.

b.      Page 3, Line 26. The term "warrant the belief" is
        incapable of comprehension or legal definition.

c.      Line 1 (3), page 4. The term "command the confidence
        of the public" is incapable of legal definition.

d.      Page 4 (1), Line 4. Uses the term "has committed any
        act" which precludes, a finding in violation, and is a
        denial of constitutionally protected due process.

e.      Page 4 (2) Line 7. The term "otherwise fails" is
        overbroad and incapable of legal definition.

f.      Page 4, Line 18. The language "or any owner, director,
        officer, member, partner, or agent of the licensee is
        overbroad.

g.      Page 5, Line 7. "Commits any fraud" is ill defined and
        means an allegation alone would be sufficient instead of
        a legal finding and is a denial of constitutional guaranty
        of due process.

h.      Page 5, Line 20 and Line 21. The wording on Line 20
        "Nature of the crime" and Line 21 usage of the term
        "crime" is ill defined and means an allegation alone
        would be sufficient instead of a legal finding and is a
        denial of constitutional guaranty of due process.

i.      Page 6, Line 9. A 30 day requirement after the effective
        date is too short a window.

Page Four
March 21, 2007

HB 1324 in its present form is somewhat impractical, confusing, overbroad and contains provisions which may be interpreted to be a violation of due process and an impediment to the stream of commerce. A future bill would create an opportunity for secondary market representatives, if given the opportunity, to understand the scope of agency problems and participate with the agency to address their concerns.

We are, therefore, taking the position that we oppose HB 1324 in its present form and ask this Honorable Committee to file an unfavorable report on the Bill to the House. However, we want to make it clear that we are willing to work on definitions, revisions, and to provide any necessary information to the Committee to reach a resolution on language that provides clarity to those that may be subject to the final bill, if enacted.

Sincerely,

Stuart R. Blatt
President

Case 1:10-cv-00113-RDB   Document 16-9   Filed 05/26/10   Page 26 of 29

A30

## SENATE FINANCE COMMITTEE - HEARING ON HB 1324
### COLLECTION AGENCIES - LICENSING
#### Sponsored By: Chr ECM (Dept)

*Witnesses:  If you are submitting written testimony only, please print "WRITTEN ONLY" before your name.*

### WITNESSES REQUESTING A FAVORABLE REPORT

| Name(s) of Witness(es) | Entity Represented | Witness Telephone # |
|---|---|---|
| Charles W. Turnbaugh | DLLR | 410-230-620 |
| Tom Gounaris | '' | 410-230-6115 |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

### WITNESSES REQUESTING A FAVORABLE WITH AMENDMENTS REPORT

| Name(s) of Witness(es) | Entity Represented | Witness Telephone # |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |



DATE OF HEARING: <u>Thursday, March 22, 2007</u>

HOUSE BILL NUMBER: <u>HB 1324</u> SENATE BILL NUMBER: _____

SPONSORED BY: <u>Chairman ECM (Dept.)</u>

ENTITLED: <u>Collection Agencies - Licensing</u>

**House Economic Matters Committee**
Suite 230, Casper R. Taylor, Jr. House of Delegates Building,
Annapolis, Maryland 21401
**Witness Sign-up Sheet** Page __/__ of __/__

**TESTIMONY: Groups, 5 Minutes**
                    **Individuals, 3 Minutes**
**PRO (for)**
**CON (against)**
**FWA (favor with amendments)**

## LIST OF SPEAKERS AND INTERESTED PARTIES
### Please Print Clearly - Do Not Skip Spaces

| NAME | PHONE | ADDRESS | REPRESENTING | PRO | FWA | CON |
|------|-------|---------|--------------|-----|-----|-----|
| Charles Turnbaugh | | | D/LR | √ | | |
| Suzanne Hays | | | MD Collection Agency Licensing Board | √ | | |
| Eileen Brandenbers | | | MD Collection Agency Licensing Board | √ | | |
| CAROLYN COOK KATHY HOWARD | 410 357 7200 | | GBBR MYHA | | √ | |
| STUART BLATT | 410-823-2222 | 116 WEST ROAD 21204 MARSHALL, DR. IZHMH, EPSTEIN, O'HATT | Maryland District of CIVIL & CRED. TORS BAR ASSOCIATION | | √ | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

✱ LIMITED TESTIMONY!

A31

Case 1:10-cv-00113-RDB Document 16-9 Filed 05/26/10 Page 27 of 29

SENATE OF MARYLAND
SENATE FINANCE COMMITTEE
VOTING RECORD

DATE:____4/5/07___

SB_____         HB__1324

SJR_____          HJR_____

MOTION____Exum / Pugh_____

FAVORABLE                    _____✓____

FAVORABLE W/AMENDMENTS       _____

UNFAVORABLE                  _____

RE-REFER                     _____

HOLD                         _____

|                                     | YEAS | NAYS |
|-------------------------------------|------|------|
| SEN. MIDDLETON, CHAIRMAN............ | ✓    |      |
| SEN. ASTLE, VICE CHAIRMAN.......... | ✓    |      |
| SEN. DELLA......................... | ✓    |      |
| SEN. EDWARDS....................... | ✓    |      |
| SEN. EXUM.......................... | ✓    |      |
| SEN. GARAGIOLA..................... | ✓    |      |
| SEN. KELLEY........................ | ✓    |      |
| SEN. KITTLEMAN..................... | ✓    |      |
| SEN. KLAUSMEIER.................... | ✓    |      |
| SEN. PIPKIN........................ | ✓    |      |
| SEN. PUGH.......................... | ✓    |      |

TOTAL    ___11___        _____

A32

Case 1:10-cv-00113-RDB   Document 16-9   Filed 05/26/10   Page 29 of 29

## ECONOMIC MATTERS COMMITTEE
## VOTING RECORD - 2007

BILL NUMBER    **H B  1 3 2 4**   DATE _____    MAR 28 2007

**MOTION:**

____✓____ FAVORABLE (FAV)    _____ AMENDED (FWA)    _____ RE-REFER TO (REI)

_____ UFAVORABLE (UNF)    _____ HOLD    _____ SUMMER STUDY (SS)

| NAME | YEAS | NAYS | ABSTAIN | ABSENT | EXCUSED |
|------|------|------|---------|--------|---------|
| D.DAVIS | | | | | |
| RUDOLPH | ✓ | | | | |
| HARRISON | ✓ | | | | |
| BRAVEBOY | ✓ | | | | |
| IMPALLARIA | ✓ | | | | |
| HECHT | ✓ | | | | |
| MANNO | ✓ | | | | |
| MCHALE | ✓ | | | | |
| HADDAWAY | ✓ | | | | |
| FELDMAN | ✓ | | | | |
| WALKUP | ✓ | | | | |
| IRK | ✓ | | | | |
| KRYSIAK | ✓ | | | | |
| MINNICK | ✓ | | | | |
| BURNS | ✓ | | | | |
| JAMESON | ✓ | | | | |
| MATHIAS | ✓ | | | | |
| LOVE | | | | | ✓ |
| KING | ✓ | | | | |
| MILLER | ✓ | | | | |
| TAYLOR | ✓ | | | | |
| VAUGHN | ✓ | | | | |
| STIFLER | | | | | ✓ |
| | | | | | |
| **TOTALS** | 20 | | | | 2 |

Derrick E. Davis

Committee Reporter

Action: _____ FAV _____